SOUTHARD
*vs*
POPE'S EX'OR.

</div>

---

## Southard *vs* Pope's Executor.

ERROR TO THE LOUISVILLE CHANCERY COURT.

*Sales of land under execution. Redemption.*

JUDGE SIMPSON delivered the opinion of the Court.

· FOUR executions against D. R. Southard as executor of J. Southard, deceased, were placed in the hands of the Sheriff of Jefferson county, and were levied upon fifty acres of land, which the defendant in the executions designated for that purpose, by a written request

<div style="text-align:right">

CHANCERY.

*Case* 63.

*January* 2.

Case stated.

</div>

and direction to the Sheriff. Three of the executions were in favor of Hundley's executors, and had not been replevied, the other one had issued on a replevin bond, and was in favor of Burks' administrators. The land was valued, and sold under all the executions at the same time, and brought less than two thirds of the valuation. It was purchased by William Pope, William C. Bullitt and William H. Pope, the first being one of the executors of Hundley, the two latter the administrators of Burks. By the terms of the purchase, the purchasers were to have an interest in the property in proportion to the sums bid by them respectively; William Pope having bid the amount of the three executions in his favor as executor of Hundley, and the other two purchasers the amount of the execution in their favor as administrators of Burks. Southard having failed to redeem within the year, was permitted by Burks' administrators afterwards to redeem to the extent of their interest under the purchase, which he done, by paying the amount of the execution and ten per centum per annum interest thereon from the time of the sale. The sum for which the land was sold under all the executions, was fifteen hundred and thirty eight dollars and eighty cents.

William Pope, the purchaser of the other interest in the fifty acres, died within a year after the sale, and having made a will and appointed his son, William H. Pope, his executor and trustee, the latter procured from the Sheriff of Jefferson, a deed conveying to him as executor and trustee, the undivided interest in said land purchased by his testator, and then exhibited his bill in this case, to obtain a division of the land, and a decree against Southard, who had still continued in possession, for the rents and profits accruing on that part of the land claimed by him, since the date of the purchase by his testator.

Southard assails the complainant's right under the purchase at the Sheriff's sale, upon various grounds, and also insists, that under the circumstances, he has in equity, a right to redeem, which right of redemption he

sets up in a cross bill, and asks the Chancellor to enforce in his favor, against the complainant.

One objection to the sale is, that it was made under all the executions at the same time, although three of them required a sale upon credit, and the other a sale for ready money. This, it is contended, operated to the prejudice of the defendant in the execution, in preventing competition among bidders. We cannot decide that such was its effect in this case, and as a general rule the owner of land would be greatly prejudiced by having it sold in separate parcels, to satisfy each execution, when the officer making the sale had more than one execution in his hands against the same defendant. It has, therefore, been held by this Court, that several executions may be combined, and the land sold under all at the same time, and it is no substantial objection, that some of the executions are for ready money, and some require sales on a credit: (4 *Monroe*, 316.)

The sum for which the land was sold, exceeded the actual amount due on the executions, a few dollars. The excess, however, was under five dollars, and it does not appear that a smaller quantity of land than the fifty acres, would have paid the executions, had the true amount been ascertained and announced at the sale. On the contrary, as the plaintiffs in the executions bid just what was supposed to be the amount due, it is a fair presumption that they done so, to secure the payment of the whole debt, in the redemption of the land, and that they would not have bid beyond the amount due on the executions, had that amount been accurately ascertained. Under these circumstances, and as the small excess for which the sale was made, was evidently the result of mistake, it cannot have the effect of rendering the sale void, and therefore, the objection on this ground is also unavailing: *Adams* vs *Keiser*, (7 *Dana*, 208; *Morrison* vs *Bruce*, (9 *Dana*, 211.) As these objections are deemed invalid, it is not necessary to determine whether, if valid, they could be rendered available in a Court of equity.

The right of Southard to redeem, is claimed upon two grounds: First, The extension of the time of re-

---

*Margin notes:*

SOUTHARD *vs* POPE's Ex'on.

A Sheriff holding executions against the same defendant should sell to satisfy all at once, though the sale as to part be on credit and part for ready money. (4 *Monroe*, 316.)

Where the excess raised by a sale of land under execution is very small and the result of mere mistake in calculation, the sale will not be set aside. (7 *Dana*, 208; 9 *Ib*. 311.)

Grounds upon which the right of redemption is

SOUTHARD
*vs*
Pope's Ex'or.
claimed by Sou-
thard.

Where a pur-
chaser under ex-
ecution extends
the time allowed
by law for re-
demption, and
the defendant in
the execution
fails to redeem
according to the
privilege thus
given, his right
is lost; but if the
purchaser, be-
fore the time al-
lowed by law, a-
gree to extend it,
and after it ex-
pire refuse to
permit redemp-
tion according
to his agreement,
it is a fraud and
the Chancellor
will afford relief.

demption by agreement, beyond the legal period. Second, The partial redemption which was made by Southard and accepted by one of the joint purchasers.

First, The extension of the time of redemption is merely a waiver of the forfeiture of the right until that period arrives, and cannot, without an evident perversion of the true design of the parties, have the effect of converting the purchase into a mere lien to secure the re-payment of the purchase money. As an agreement by the purchaser to prolong the time, might operate to prevent a redemption within the legal period, a refusal by the purchaser to accept the money and permit the redemption to be made within the time agreed, would be a fraud upon the defendant in the execution, and authorize an application by him to a Court of equity for relief. But where the purchaser acts in good faith in extending the time, and the defendant in the execution fails to redeem within that time, his equity of redemption is lost. The extension of the time does not justify the inference that the purchaser intends to surrender the benefit of his purchase. Such an inference would be forced and unwarranted. Such is not the understanding or design of the parties, or the legal effect of the act. The purchaser derives no advantage from the indulgence; it is intended exclusively for the benefit of the other party. It is not inconsistent with the right claimed, to hold the land under the purchase; in the event of a failure to redeem before the expiration of the time. The omission to redeem according to the agreement, renders the purchase absolute and irredeemable. This is evidently the expectation and understanding of both parties in such a case, and the indulgence being obviously for the benefit of the debtor, should not be prohibited, which in effect it would be, by giving it the legal operation contended for. Although, therefore, an extension of the time was given, yet as Southard did not pay the purchase money and interest within the time, it gave him no right to redeem after the time had expired.

Where a pur-
chaser at Sher-
iff's sale of land,

Second, The fact relied upon in the second ground, affects more seriously the title of the purchaser. Where

land has been sold for less than two thirds of its value, and the right to redeem exists, what effect is produced upon the purchase by the payment and reception of part of the purchase money? It would be unjust for the purchaser to keep the land when part of the price had been refunded. The act of receiving the money thus paid, would be inconsistent with the right to make the purchase absolute. The just and natural inference from receiving part of the purchase money is, that the purchaser thereby intends to waive the right to enforce a forfeiture of the equity of redemption, and looks to the land merely as a security for the payment of the balance of the money. Such also, is its legal effect. The redemption having been commenced, must progress until it be complete. The purchaser is under no obligation to return the money which he has received. Upon what terms then, can he be permitted to retain it? As a partial redemption, with a right to make his purchase absolute to the extent of the balance remaining unpaid? This would be repugnant to the presumed intention of the parties, and liable to the additional objection, that it would give to a single purchase a double character, that of being redeemable in part, with the right to enforce a forfeiture as to the residue. Inasmuch as he cannot retain both the land and money, his reception of the latter operates as a legal waiver of his right to enforce a forfeiture and make his purchase absolute under the statute, and gives to the owner of the land a right to redeem after the expiration of the year. The purchaser is under no obligations to receive less than the whole amount of the purchase money. But if he receive a part, he thereby changes the character of his title, surrenders his right to enforce a forfeiture under the statute, and by enabling the owner to redeem after the year, converts his purchase into a mere lien to secure the payment of the balance of the purchase money. It is necessary to give this effect to the act of the parties, to do justice between them; at the same time it will most probably effectuate their intention, and it will certainly accomplish the object of the law, in perfecting

*Southard vs Pope's Ex'or.*

which is redeemable, receives part of the redemption money, it is a waiver of the right to insist upon holding the land except as a security for the remainder of the price. That there were two who made a joint purchase and one only received the portion of the redemption money, can make no difference, it being a joint purchase either had the right to contract in respect to it.

the title of the purchaser to the whole purchase, or ren-dering it subject to a full and complete redemption.

Unless then there is something to distinguish the purchase in this case, from an ordinary one, and take it out of the operation of the principle here asserted, South-ard has, by the partial redemption made, acquired the right to go on and complete it.

This was a joint purchase by three individuals. The legal period of redemption under the statute terminated on the 4th of December, 1844. Before that period ar-rived, William H. Pope agreed to extend the time to the first day of the succeeding month. Within that time Southard paid to J. F. Bullitt, the agent of Pope, and William C. Bullitt, two of the purchasers, the sum of three hundred and sixty four dollars fifty five cents, being the amount due upon the execution in favor of Burks' administrators, including ten per cent. interest thereon. By an agreement among the purchasers, their respective interests in the land purchased, were to be in proportion to the relative amount of their debts at the time of the sale.

The purchase thus made was essentially a joint one in its character and effect, and combined the sums due on all the executions, into one consolidated debt. The defendant in the execution had a right to redeem by the payment of the whole purchase money to either of the purchasers. An agreement with either for an extension of the time to redeem, was obligatory on all. A partial payment would not operate merely as a redemption to the extent of the interest of one of the purchasers, it would apply to the whole purchase, and affect it as a unit.

There is no room for discrimination between the pur-chase in this instance, by the plaintiffs in the executions, and a joint purchase by strangers, who had appropria-ted different amounts for the accomplishment of the general object. In the case supposed, although the in-terests of the purchasers in the subject of the purchase would not be equal, yet they would have a joint control over it, and the act of one in reference to its redemption by the owner of the land, would bind all.

The law requires the officer to sell at once, and together, where there is a single tract, and not in separate parcels, land enough to satisfy the executions against the defendant. A sale in this form is deemed most beneficial to the defendant, in producing a better price for his land than could be obtained by a sale of it in a different mode, and at the same time affording him facilities for its redemption from the purchaser. It is not then, in the power of the purchasers, to deprive him of the right which the law gives him, to regard the sale as a single transaction and treat it accordingly.

Southard, in making the partial payment to one of the purchasers, did not consent to waive its legal effect. He insisted that it gave him the right to redeem after the expiration of the year, by the payment of the balance due upon the purchase. This is admitted by Pope in his answer to the cross bill. There is no feature in the transaction to authorize this to be placed upon a different footing from other purchases. The defendant had a right to regard the parties as purchasers in *solido*, and treat them as such. There is nothing to exempt the case from the operation of the general rule, and consequently, Southard's right to redeem by paying the residue of the purchase money, still exists, notwithstanding the legal period of redemption has expired.

The question then arises, as to the terms upon which this right is to be exercised. Must Southard pay ten per cent. interest until the redemption is made, or that rate of interest for a year, and six per cent. afterwards, upon the aggregate amount then due? The latter, we think, is the proper mode of ascertaining the extent of Southard's liability, and that he should be required to pay the sum thus due, by a given day, and upon his failure, the fifty acres of land should be subjected to sale for its payment.

Wherefore, the decree of the Chancellor denying Southard's right to redeem, is reversed, and cause remanded for further proceedings in conformity with this opinion.

*Thruston, Fry & Page, Duncan & Ripley and Loughborough* for appellant; *Guthrie* for appellee

---

*Margin notes:*

SOUTHARD
*vs*
POPE'S EX'OR.

Where a purchaser of land under execution extends the time of redemption allowed by law to the debtor, the ten per cent. allowed by law can only be exacted up to the day allowed by law to redeem and six per cent. afterwards.