Nov. Term,<br>1850.<br><br>CLARK<br>v.<br>WATSON.

---

## CLARK *v.* WATSON.

Trial of right of property. The plaintiff gave in evidence three executions in his favor, and which were all levied on the property. On the first and third the law did not require an appraisement of property before sale, but on the second it did. The sale was nominally made on all the executions without appraisement, and the plaintiff became the purchaser, but at a price not sufficient to pay the first execution upon which the amount bid was paid. The plaintiff left the property in the possession of the execution-defendant. A young colt was sold at the said sale with the mare, (a part of the property), at the execution-defendant's request, but no return of that fact was made by the constable. *Held*, that the sale to plaintiff was valid.

ERROR to the *Vigo* Circuit Court.

PERKINS, J.—*Watson* filed his claim, before a justice of the peace, to the following property, which had been levied on, at the suit of *Clark*, as the property of one *John*

*Friday,*<br>*December 6.*

Nov. Term, 1850.

CLARK
v.
WATSON.

*Hay,* viz.: one brown mare, one brown horse, one sorrel mare, two colts, four plows, three cows, three calves, and four head of young cattle. There was a trial of the right of property before the justice, and *Watson* was successful. The cause was appealed to the Circuit Court, where it was again tried with a like result.

On the trial in the Circuit Court, *Watson* gave in evidence three executions, the first of which was delivered to the officer, *November* 21, 1844; the second, *November* 21, 1844; and the third, *November* 28, 1844. The executions were all levied on the property in question, and were all in favor of said *Watson.* Upon the first and third, the law did not require an appraisement of property before sale ; upon the second it did. The sale was nominally made upon all the executions without appraisement, and *Watson* became the purchaser, but at a price not sufficient to pay the first execution, upon which the amount bid for the property was credited. Upon the foregoing facts *Watson* rested his title. It was further shown that *Watson,* after his said purchase, left the property in the possession of the execution-defendant, *Hay,* and that *Clark,* thereupon, believing said sale to *Watson* to be void, had an execution in his favor against said *Hay* levied upon the same property, and upon this ground, resisted *Watson's* claim to it in this suit.

*Clark* insists in this Court that the sale to *Watson* was void because, 1. It was not preceded by an appraisement of the property; 2. The property was left, after the sale, under suspicious circumstances, with the execution-defendant; 3. That a colt, not mentioned upon the execution as levied on or sold, was in fact sold at said sale with the mare which foaled it, and was levied on.

We do not think the sale void for the first cause. *Watson,* being the owner of all the executions, had the control of them, and would receive the entire proceeds of the sale. He might have required that the sale should formally take place on the first execution, till it was satisfied. And the sheriff might, under the circumstances of this case, have sold separately on each execution. He

did not, in form, do so; yet the money was in fact, all credited on the first execution above mentioned, upon which no appraisement was required, and the entire property sold was insufficient to pay that; and we think the sale may be regarded as really upon it alone. Had the first and second executions mentioned belonged to different plaintiffs, and required the money derived from the sale to be apportioned between them, one requiring an appraisement and the other not, it might have been the duty of the sheriff to apportion the property before sale, and appraise upon the one and not upon the other; the property being susceptible of division. But if the property was not so susceptible, the whole might probably have been sold without appraisement, and the money apportioned. See *Southard* v. *Pope's* Exr. 9 B. Mon. 261.

Upon the second point, the question of fraud was for the jury, and has been twice passed upon with concurring verdicts. We do not think the facts of the case would authorize us to reverse the decision upon this ground.

As to the third cause, the evidence of the fact asserted is as follows: The indorsement by the sheriff upon the execution made no mention of the colt, and he testified that he had no recollection of selling it. *Jacob Hays*, a son of the execution-defendant, testified that when the mare and colt in question were brought forward, the execution-defendant requested the sheriff to sell them together, and he did so; that the colt was worth nothing by itself and separated from the mare. One *Bolton* swore that the colt, at the time of the sale, was worth 10 dollars, but he did not say whether with or separate from the mare.

The jury found from this evidence that the sheriff sold the colt, and they might so find from it; and we do not think the sale void. It was the duty of the sheriff to sell the property in such parcels as would produce the largest sum. It is evident from the testimony that the mare and colt should have been sold together upon that principle. The colt was bound by the lien of the execution, though

Nov. Term,
1850.
_____

not formally levied upon, and the sheriff should have noted its sale, but the title of the purchaser will not be prejudiced by his failure to do so. The evidence given did not contradict the sheriff's return, as it did not mention the colt. We think the judgment should be affirmed.

*Per Curiam.*—The judgment is affirmed.

*J. P. Usher*, for the plaintiff.

*C. W. Barbour*, for the defendant.