## Mulligan v. Mulligan.

(Decided December 15, 1914.)

### Appeal from Fayette Circuit Court.

1. Dower—Inchoate Interest—Bar, Release or Forfeiture.—Where a husband whose estate consisted of both mortgaged and unmortgaged real estate placed the same in trust, the trustee to sell sufficient thereof to pay his indebtedness; and unmortgaged properties were sold to realize money with which to discharge the liens on mortgaged properties not sold, the amount of the mortgages should be deducted from the proceeds of the properties sold in fixing the amount upon which to base a calculation of the value of the wife's inchoate right of dower.

2. Dower—Nature and Requisites.—The wife's inchoate right of dower is extinguished by a sale of the husband's real estate to enforce the payment of tax liens thereon.

3. Husband and Wife—Mutual Rights, Duties and Liabilities.—Where a husband conveyed to a trustee all his property, the trustee to sell so much thereof as was necessary to discharge his indebtedness; and in the meantime was to maintain the grantor's home and support and maintain his wife and family therein, the grantor still continued as pater familias, and he is the only person who

may rightfully complain of the action of the trustee in interpreting and executing that provision of the deed. The wife was not entitled to an allowance payable directly to her.

4. Husband and Wife—Mutual Rights, Duties and Liabilities.— Where such conveyance provided that the cash value of the wife's inchoate right of dower should be paid to her out of the proceeds of such properties as might be sold, and she employed attorneys to represent her interests, their bill for services rendered cannot be classed as necessaries for which the husband is made liable by statute.

5. Husband and Wife—Mutual Rights, Duties and Liabilities.—The statute imposes upon the husband liability for necessaries furnished to the wife. Medical services are necessaries; and the reasonable value thereof, when rendered, may be recovered from the husband. But the wife is not entitled to an allowance out of her husband's estate to pay for medical services before the same have been rendered.

GEORGE B. KINKEAD, JAMES H. MULLIGAN and FALCONER & FALCONER for appellant, Lexington Banking & Trust Company.

O'REAR & WILLIAMS for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Reversing on original appeal and affirming on cross-appeal.

J. H. Mulligan, a citizen of Lexington, was in February, 1913, the owner of real estate valued at $100,000 to $125,000, and comprising a farm known as the McCoy Place, near Lexington, and various parcels of real estate within the city. Roughly speaking, about half of this real estate in value was non-productive, while of the remainder, there were a number of parcels, the income derived from which was so negligible, compared with their their market value, as to render them unprofitable and undesirable investments.

Mr. Mulligan was in debt, and had been in that condition for some years. In point of fact, some of his indebtedness seems to have been inherited along with some of his real estate. His obligations included approximately seven thousand dollars of accrued and delinquent taxes due the City of Lexington; approximately fourteen thousand dollars of indebtedness secured by mortgages on parts of his real estate; and other unsecured debts aggregating in all a rough total of about twenty-five thousand dollars.

The interest on this indebtedness together with the taxes, repairs, insurance and other fixed charges on his real estate absorbed such an undue proportion of the

income derived therefrom as to confront him with the necessity for a readjustment and lightening of the burden.

It seems that he and his wife were unable to reach any agreement, however, as to what particular pieces of real property should be sold. It is contended that she refused to unite in a conveyance of any of it. It is clear that she firmly declined to unite in any conveyance of the property occupied by the Mulligans as a home, which is known as "Maxwell Place," and consists of some thirteen acres of land in the city of Lexington, which is quite valuable. She suggests in her answer that it was the home of her husband's parents; "that it is suitable at present only for a residence; that it furnishes pasturage for the milk cow and driving horse, and a kitchen garden."

Mr. Mulligan desired, however, to sell this place or part of it at least, suggesting that to one in his financial condition this land was much too valuable to be kept for a "garden which yields only its accustomed crop of weeds," and for pasturage for one "pathetic cow," and as a recreation ground on which one old grey mare might "occasionally kick up her heels in the sunshine, congratulating herself that in her old age she is still left 'to tread alone some banquet hall deserted,' if pasture land at two thousand dollars per acre to the eyes of an ancient equine could be so likened."

Mr. Mulligan had no personal property out of which he could pay anything on his indebtedness. He was sixty-nine years of age, and so far as the record shows had no income other than that derived from his real estate.

With matters in this condition, he executed on February 25, 1913, to the Lexington Banking & Trust Company a trust deed, conveying to it in trust his entire estate in Kentucky, consisting of about twenty pieces of real estate.

By the terms of that conveyance, the trustee was to collect the rents, pay the taxes, make the necessary repairs on the real estate, sell so much of it as was necessary to pay Mr. Mulligan's debts, and re-convey the residue to him.

The deed contained a provision that should Mrs. Mulligan fail to unite therein, the trustee should, out of the proceeds of the sale of any of the property which might be sold by it and in which she had not released dower, pay to her the cash value of her inchoate right

of dower in the property so sold upon her release thereof. Mrs. Mulligan failed to unite in the execution of the trust deed.

On the next day after its execution, the trustee, Lexington Banking & Trust Company, filed its petition in the Fayette Circuit Court against James H. Mulligan, Genevieve Mulligan, his wife, and certain mortgage creditors, seeking an interpretation of the trust deed and the guidance of the chancellor in the execution of same for a settlement thereof.

Notwithstanding the fact that her inchoate right of dower was arranged for in the trust deed, and was besides the subject of judicial protection, Mrs. Mulligan filed an answer in which she stated that her release of her inchoate right of dower in any of her husband's real estate would depend upon what properties were sold.

On May 24, 1913, the cause was referred to the court's Master Commissioner to receive proof of claims against Mr. Mulligan, and to determine which of his properties it was best to sell for the purpose of paying his indebtedness.

The Commissioner fixed May 29, 1913, for a hearing; but the parties by agreement adjourned to June 11, 1913, pending an effort to bring about an agreement between Mr. Mulligan and his wife. This having failed, the Commissioner fixed November 3, 1913 for a hearing; and on December 13, 1913, he filed his report of claims presented and recommendations as to what real estate should be sold, and the order in which it should be offered; recommending the sale only of property upon which there were already mortgage liens, and as to which Mrs. Mulligan had theretofore released her inchoate right of dower by joining in the mortgages thereon.

However, after the filing of the Commissioner's report, Mrs. Mulligan filed an amended answer, consenting and agreeing to relinquish dower in any of the lands mentioned in the trust deed except Maxwell Place, and agreeing to take the cash value of her dower right, to be ascertained by the court, in those tracts which were not mortgaged, and in the excess of the sale price over the mortgage in respect of those that were mortgaged.

On February 21, 1914, a judgment and order of sale was entered, whereby it was ordered that so much of Mr. Mulligan's real estate as was necessary to pay his

debts should be sold, Mrs. Mulligan to have the same dower interest in the proceeds of sale as she had in the property sold. The judgment further provided that "in the event of the sale of any mortgaged property of said James H. Mulligan, in which mortgage his wife has heretofore joined and relinquished her dower therein, it is adjudged that if said properties or any of them bring a sum or sums in excess of said mortgage thereon respectively, then said Mrs. Mulligan would have dower in such excess; and that such dower in such excess should be estimated and paid to her as above provided."

The Master Commissioner was directed to "hear evidence of the value of Mrs. Mulligan's inchoate dower in such properties, taking the accepted bids at which the properties were sold as the valuation of said properties for the purpose of estimating the value of her dower right."

On April 18, 1914, the Master Commissioner filed his report of sale, and on April 25, 1914, filed his report on the value of Mrs. Mulligan's inchoate right of dower.

The property ordered to be sold, and the precedence in which it was to be sold under the judgment, was as designated by Mr. Mulligan.

There were five tracts included in a mortgage executed by Mr. Mulligan to the Transylvania University, in which mortgage Mrs. Mulligan had joined, releasing dower. Of these, Nos. 2, 3 and 4 were ordered to be sold, and were sold. The amount of that mortgage was $6,041.93 on the day of sale. The sale price of these properties was $13,550.

Of the two tracts included in the mortgage to the Security Trust Company, No. 1 was ordered to be sold, but was not sold. The amount of that mortgage on the day of sale not including the amount of proportionate costs, etc., was $7,709.15.

There were also ordered to be sold five pieces of unmortgaged property, one of which we are unable to identify with any of the properties described in the trust deed. These five were all sold, and brought $15,045.

Under the judgment, as has been seen, Mrs. Mulligan was to have the cash value of her inchoate right of dower in the unmortgaged properties sold, and also in such sum as was derived from a sale of the mortgaged properties over and above the amount of the mortgages.

The Commissioner reported that the mortgaged and unmortgaged properties sold, realized the sum of

$28,595.00; that the liens on the properties sold were as follows: Mortgage liens, $13,565.00; judgment liens, $183.43; tax liens due City of Lexington, $5,855.85, which including an allowance of $800 for probable costs, made a total of $18,641.72, leaving $9,953.28, in which sum Mrs. Mulligan is entitled to dower therein, which according to the dower tables would be $844.04.

Mrs. Mulligan filed exceptions to this report, and the same were sustained. The court then referred the cause back to the Commissioner for amended calculations, directing him not to deduct the amount of the tax liens in fixing the amount in which the cash value of her dower was to be ascertained, and not to deduct the amount of the Security Trust Company mortgage lien, to pay which certain unmortgaged properties had been sold.

The Commissioner then filed an amended report reciting that the total sale price of all the properties sold was $28,959.00; deducting from this $6,041.93, the amount of the Transylvania University mortgage, left $22,553.07; and the cash value of Mrs. Mulligan's dower right in that sum was $1,912.50.

To this report Mr. Mulligan excepted because the amount of the tax liens was not deducted, and also because the Commissioner did not deduct from the total sum realized by the sale of the properties, the amount of the Security Trust Company mortgage lien.

The court overruled these exceptions, and ordered the Commissioner to pay Mrs. Mulligan $1,912.50 out of the funds in his hands. Mr. Mulligan appeals.

The various properties were sold for the express purpose of raising enough money to pay Mr. Mulligan's debts, and included in the debts which are to be paid out of the proceeds of these properties is the mortgage debt due to the Security Trust Company. The property included in the mortgage to the Security Trust Company was of a value greatly in excess of the amount of that mortgage. Out of the proceeds of the sale of unmortgaged properties the lien of that mortgage will in this proceeding be discharged, and her inchoate right of dower which she had relinquished in such properties, by uniting in the execution of that mortgage, will again attach thereto. It is, therefore, manifestly proper and equitable that the amount of the Security Trust Company mortgage debt should have been deducted from the proceeds of the properties sold herein, in fixing the

amount upon which to base the calculation of the value of the wife's inchoate right of dower.

As to the deduction of the tax liens, the court is of the opinion that the amount of these liens should also be deducted from the proceeds of the properties sold, in fixing the amount upon which to base a calculation of the value of the wife's inchoate right of dower.

In this case the property was not sold to enforce the city's lien for taxes by a direct proceeding instituted for that purpose; but was sold in a proceeding for the purpose of obtaining the money wherewith to discharge such tax liens existing in the city's behalf; and the same effect should be given thereto in respect of the wife's inchoate right of dower as would have resulted from a sale of property in a direct proceeding to enforce tax liens.

We have had no difficulty in reaching the conclusion that a sale of any of Mr. Mulligan's property, in a proceeding by the city to enforce its lien for taxes conferred by Section 3176, Kentucky Statutes, would operate to extinguish his wife's inchoate right of dower.

The statute (Kentucky Statutes, Section 2132) confers upon the surviving spouse an estate for life in one-third of all the real estate of which the deceased marital partner was seized in fee simple during the coverture, unless the right thereto has been barred, forfeited or relinquished.

But this statute has for its purpose the protection and conservation of the rights of each in the realty of the other, and is not to be construed in derogation of the right of the sovereign to enforce the payment of taxes. All property is held subject to the right of taxation exercised as an incident of sovereignty; and the power to enforce the collection of taxes imposed under authority of law should not be embarrassed or hampered by any want of authority to vest in the purchaser at tax sales the full title and interest of the owner thereof, including the wife's inchoate right of dower.

Appellant also contends that the chancellor erred in ordering the payment to Mrs. Mulligan of the cash value of her inchoate right of dower as of the date of the judgment, i. e., out of the first money which should come to the hands of the Commissioner.

Inasmuch as unmortgaged property was sold for the purpose of providing money with which to discharge the lien on mortgaged property, the application of the

fund so derived and the priority of payments should be determined in the same manner as if sufficient mortgaged property had been sold to discharge the mortgage lien.

The mortgage liens on the real estate owned by Mr. Mulligan amounted to approximately fourteen thousand dollars; and these liens, as well as the tax liens mentioned, were of course superior to the wife's inchoate right of dower; and must be removed before she is entitled to anything. The fund derived from the sale of the real estate should therefore first be applied to the discharge of the mortgages and tax liens. After these are discharged, the fund derived from the sale of the real estate as it comes to the hands of the Commissioner, should be pro rated between Mrs. Mulligan and the unsecured creditors until the liquidation is fully consummated.

2. From certain rulings of the court which will now be taken up, Mrs. Mulligan prosecutes a cross-appeal.

There was in the trust deed executed by Mr. Mulligan to the Lexington Bank & Trust Company, a provision which reads as follows:

"Said trustee shall take possession of and control of all of said property, rent it out, and keep it under rent for the best price and upon the best terms that can be obtained, and appropriate the same for the support and maintenance of the wife and family of first party in such manner as it shall be necessary and proper. * * * Said trustee shall maintain the personal home of the said James H. Mulligan, and support and maintain his wife and family therein not longer than it is absolutely necessary for it in carrying out the terms of the trust herein mentioned."

When Mrs. Mulligan filed her answer herein, she made it a counterclaim against the Trust Company, averring that Mr. Mulligan and herself were husband and wife; that it was the duty of the trustee under the trust imposed in the deed to maintain the personal home of James H. Mulligan; that Maxwell Place was that home; that he had inherited it from his father and mother, and that "he (Mulligan) is now living at said home and of course may, if he chooses, continue to live there, a choice which this defendant earnestly hopes he will be pleased to exercise." She further charged that it was necessary, and under the terms of the deed, the duty of the Trust Company to make to her individually an allowance for

clothing for herself and children and for incidental expenditures, i. e., "pin-money;" and that this the trustee had declined to do. She prayed for an allowance of $1,800 per annum, and also for an allowance of $500 per annum for each of her two daughters, to be paid to her, although both of these daughters were of age. On the same day a motion was entered for the immediate granting of such allowance.

On March 22, 1913, the chancellor entered an order requiring the trustee to pay to Mrs. Mulligan for herself and her two daughters, the sum of $150, and fifty dollars per week thereafter. On April 19, 1913, complaint having been made by Mrs. Mulligan, the chancellor rescinded the former order, and ordered the trustee to pay the sum of sixty dollars per week for the maintenance and support of the family of James H. Mulligan, the said sum to be by the trustee paid to such person as the trustee might select, "it being the purpose of this order to give the trustee full authority and direction to carry out the express provisions of said trust with reference to the support of the family; said expenditures to include food, raiment and such incidental and necessary expenses as may be incident to the support of the family of said Mulligan; and in expending said money it may make payment to the persons from whom such necessaries may be purchased, or may make cash allowances to any individual member of said family for any necessary purchase as it may deem proper."

Mrs. Mulligan insists that the trustee should have been required to pay direct to her the sum of not less than $150 per month for the support of herself and $40 per month for each of the two daughters, and that it should now be directed to pay to her this amount.

In the answer which she filed, she took the position that her husband had abdicated to the trustee, the duty of providing a suitable home for his family. But we do not think this a fair interpretation of the plan and purpose of the trust. While it might be said that Mr. Mulligan temporarily delegated to the trustee the duty of providing the money with which to maintain his home, his rightful position as the head of his family he did not abdicate; nor could he abdicate it thereby, so long as the marital relation continued.

He was, therefore, in our opinion the only person having a right to complain of any action upon the part of the trustee in interpreting and executing the provision of the

trust deed that "said trustee shall maintain the personal home of the said James H. Mulligan and support and maintain his family therein."

3. It appears from the report of the Master Commissioner filed December 13, 1913, that Mrs. Mulligan's attorneys filed a claim against the trust estate for $1,000 for professional services rendered to Mrs. Mulligan. This claim the Commissioner declined to allow. Mrs. Mulligan filed exceptions to the report, and same were overruled. Of that ruling she complains upon her cross-appeal herein.

It is conceded that unless the services mentioned may be classed as "necessaries" coming within the purview of Section 2130, Kentucky Statutes, the claim was not a proper charge against Mr. Mulligan's estate.

The plaintiff, Lexington Banking & Trust Company, in its petition set up the fact that the trust deed executed to it by Mr. Mulligan provides for the protection of Mrs. Mulligan's inchoate right of dower; and in the absence of such provision in the deed or allegation in the petition, the wife's inchoate right of dower is the subject of judicial protection.

On the other hand, the matter of a personal allowance to Mrs. Mulligan was one, the trustee's action in respect of which was not and could not be the subject of a competent objection or complaint upon her part.

While it was proper, if she so desired, that Mrs. Mulligan should be represented by counsel in this cause, we are of the opinion that such representation cannot be classed as one of those necessaries for the wife for which the statute renders the husband liable.

The act of Mr. Mulligan in making provision for the payment of his debts and the removal of the various liens from his real estate was in fact as much an effort to protect his wife's present as well as expected future interest in his real estate as it was to protect his own, and the trust deed protected her legal interest in express terms. An effort on her part to obtain from the estate of her husband a greater sum than she was in law entitled to was not a "necessary" within the purview of the statute, but on the contrary was in this case deleterious to her own interest in prolonging the settlement of the trust, and thereby increasing the claims against her husband's estate, in which she had an inchoate right of dower. Her effort was an endeavor to enforce a claim to which she thought herself entitled, but was not necessary in this

instance. However, had it been necessary, we do not think that in a proceeding of this nature the fees of her counsel are a proper charge upon the estate of her husband.

4. On March 22nd, 1913, the date on which Mrs. Mulligan filed her first application for an allowance, it appears from her affidavit then filed that she was in good health, but pending this litigation she was found to be affected with a form of carcinoma. On January 17, 1914, she filed the affidavit of her physician and entered a motion that the trustee herein be directed to provide out of the trust estate for her medical attention and treatment a sum sufficient to enable her to be carried either to Baltimore or New York City, where she could have applied the radium treatment to her ailment, and that the trustee be directed to raise such sum as might be necessary for this purpose out of the trust estate not exceeding five thousand dollars. The affidavit mentioned is not copied in the record, the clerk certifying that it could not be found.

Upon the entry of this motion, Mr. Mulligan filed his own affidavit stating that when he was advised by the physician attendant upon his wife of the grave nature of her malady and learned that radium treatment might be found necessary, he made arrangements with his son whereby his son arranged to procure and furnish to him at once the sum of one thousand dollars to defray said expense; that this sum had been held by him awaiting the advice and wishes of the attending physician; that this sum be had at command supposing it to be ample for present needs, and that he stood ready to afford such comfort, hope or consolation to his wife as might result from such treatment even though it brought no promise of benefit.

The affidavit further states that the ''affiant needs the intervention of no lawyers or other persons to suggest to him the impulses of sympathy or humanity to any person, more especially to his wife or any member of his family or any person, in short, having a claim upon him. He but awaits the direction of Dr. Bullock as to what shall be done on his part.''

This money, it seems, Mrs. Mulligan refused to accept; and Mr. Mulligan immediately thereafter borrowed from the trustee, Lexington Banking & Trust Company, the sum of one thousand dollars for the purpose mentioned, which was delivered to Mrs. Mulligan and retained by her.

Upon a consideration of this motion the chancellor ruled that he had no authority to direct the trustee to make such appropriation out of the trust estate, and of this ruling Mrs. Mulligan complains and contends that this sum should now be ordered paid to her.

The statute imposes upon the husband liability for necessaries furnished to the wife. Medical services are certainly necessaries; and the reasonable value thereof, when same have been rendered, may be recovered from the husband. But the refusal of the trustee to make an appropriation therefor out of the trust estate before such services were rendered, was a matter concerning which only Mr. Mulligan has the right to complain.

6. From the record, there can be no doubt that Mr. Mulligan is financially responsible for all necessaries which his wife may need. Nor do we understand from this record that he has been derelict in this regard, or unwilling to meet all reasonable and proper demands made upon or suggested to him, either by her or others, or by the exigencies of her condition.

The merits of the differences which seem to have arisen between this husband and wife are not for us to pass upon. In fact there seems to have been no marked dissension between them other than that the wife seemed to think that the husband by his act in temporarily conveying his property to a trustee, failed to provide her with available funds, termed by her "pin-money," to enable her to maintain a place in society suitable to her station as the wife of her husband; and the husband seemed to be of the opinion that the wife was unnecessarily embarrassing him financially in refusing to join him in conveying some part of his real estate to enable him to be relieved of the unpleasant pressure of his obligations.

There is no charge or intimation upon the part of the husband that Mrs. Mulligan has been in fault in any manner other than an attempt to interfere with his management of his own estate; nor is there charge or intimation upon the part of the wife that Mr. Mulligan has been guilty of conduct questionable in the remotest degree. She does not intimate that he has been guilty of wasting his estate, nor does she charge that he is incapable of its proper and judicious management. On the contrary, she says that he is an able lawyer of good standing and unusual ability. His only imperfection seems to have been that he found himself unable to ex-

tricate himself from the burden of accumulated and accumulating obligations created in an honorable way, except by disposing of some of his real estate for that purpose.

The judgment of the circuit court is reversed on the original appeal for proceedings consistent with this opinion, and affirmed on the cross-appeal.