tition charging them with liability on the Sturgeon lines is dismissed on its merits.

### Ralph Sherman Line.

 Ralph Sherman was another successful farmer and stockraiser, with large holdings of real estate in Poweshiek county, Iowa. During the years 1920 to 1922 the Merchants' National Bank had sold some of his notes aggregating $7,000 to different parties, and on July 31, 1923, he was indebted to the bank in the sum of $20,000, evidenced by five promissory notes. And on that date, being pressed to give security for this loan, he gave a note to the Merchants' National Bank for $27,000 signed by himself and wife, and secured by second mortgage on their farm land. On the back of the note is the following notation in the hand writing of B. J. Carney, vice president and one of the directors of the bank: "This note carries nine notes as collateral amounting to $27,000 as follows: (setting out the amounts)."

The testimony of Mr. Carney, however, developed that this note and mortgage was given to the bank as a trustee to secure the $20,000 indebtedness then existing as against Ralph Sherman to the bank, and also $7,000 then held by private parties. Subsequent to this date the bank purchased one of these notes in the amount of $2,000 from J. C. Goodrich who was a director of the bank. The explanation of the purchase being that the bank had guaranteed its payment by indorsement, and the bank was compelled to take it upon their guaranty.

The bank, through its president, George H. Hamlin, also purchased one of these notes in the sum of $2,000 from one Fred Reisch, but there is no evidence that this note was indorsed by the bank when sold to Mr. Reisch, or that the bank was compelled to purchase it.

The only question of the Ralph Sherman account is as to the knowledge of the various directors of the liability of the bank at the time of the purchase of the Fred Reisch and J. C. Goodrich notes. There is no evidence that would bring home a knowledge to any of the directors that the note that had been sold to J. C. Goodrich was indorsed by the bank, or that this paper had been handled through the bank. Mr. Carney testified that he had no knowledge of the transaction, but was compelled to take up the Goodrich note on account of the bank's guaranty. The only question on this account is as to the knowledge of the various directors of the liability of the bank upon the Fred Reisch and J. C. Goodrich notes; the Fred Reisch note was taken up by the president, George H. Hamlin. It contained no direct indorsement of the bank. Each of the directors, including Mr. Carney, denied knowledge of any liability of the bank on this Fred Reisch note or on the J. C. Goodrich note. The evidence fails to bring home a knowledge of this indirect line of credit of Sherman to any one other than George H. Hamlin. While there are a number of circumstances which might have put the directors on inquiry, such as the payment of interest and the taking of the $27,000 note and mortgage, yet these circumstances could all be explained on the theory that the bank was simply looking after the interest of its customers.

The bank examiner at no time discovered or reported any excess loan in this line that might impart notice to the directors. The court, therefore, finds no liability on this line as against any of the directors except as to the purchase of the Fred Reisch note by Mr. George H. Hamlin at a time when the bank already held $20,000 of Mr. Sherman's paper. Judgment will therefore be entered against George H. Hamlin, only, for an additional $2,074.04 on the Fred Reisch transaction, with 6 per cent. interest from July 20, 1924, aggregating $2,658.65.

It is therefore ordered that the plaintiff recover as against each and all of the defendants the sum of $12,241.20 as herein adjudicated, and, in addition thereto, an additional sum of $2,658.65 against the defendant George H. Hamlin. All parties except.

### In re GISH.

District Court, W. D. Kentucky, in Bankruptcy. December 7, 1928.

W. A. Wells, of Henderson, Ky., for bankrupt.

John C. Worsham, of Henderson, Ky., for trustee.

DAWSON, District Judge. This matter is before me on petition of Charles M. Gish to review the action of the referee in entering the order of September 26, 1928, denying the petition of the bankrupt for a sale of the 300-acre tract of land subject to his homestead, and postponing the bankrupt's homestead rights in the proceeds until all the scheduled creditors have been paid.

At the time of his adjudication, the bankrupt owned, and, with his wife, lived upon, a 300-acre tract of land, upon which the Federal Land Bank of Louisville, Ky., held a mortgage, duly executed by the bankrupt and his wife. There was a balance due on this mortgage of approximately $5,800. The bank proved its mortgage claim in the bankruptcy proceeding, and, while not specifically praying for the enforcement of its lien in said proceeding, the proof of its claim made it a party to the proceeding, and, if it appeared to the referee that there was any equity in the land for the unsecured creditors, the bankrupt court undoubtedly had the right to sell the land, as it was asked to do by the trustee. It is true the bank in a letter suggested that the property be sold subject to its mortgage lien, but the bank had no right to dictate the terms of the sale.

The referee ordered the land sold, subject to the lien of the bank, but made no provision relative to homestead or dower rights, although the bankrupt had claimed his homestead at the time he filed his schedule. The property was sold by the trustee under the order of sale on July 23, 1928, and at the sale Gish and his wife appeared, through their attorney, and publicly announced that they expected to claim homestead and dower rights in the land. The trustee asked the court to set aside this sale, on the theory that this announcement of Gish and his wife frightened prospective purchasers and beat down the sale price. The court sustained the motion, and ordered a resale of the property upon the same terms as those contained in the original order of sale, with the additional provision that it should be sold free of the bankrupt's homestead interest therein and his wife's interest therein, "except they are allowed their homestead interest out of the surplus funds, if any there be, after the payment of the debts against said estate as set out in the schedules in this matter." It is this order of which the bankrupt complains, and he specifically complains because his homestead was not set aside to him in the land itself.

The order of the referee is clearly erroneous. It is thoroughly settled in Kentucky that general unsecured creditors of a debtor cannot sell his homestead to satisfy their claims. Section 6 of the Bankruptcy Act (11 USCA § 24) recognizes and gives full force to the exemption statutes of the several states. Therefore bankruptcy does not work any forfeiture of the bankrupt's homestead rights nor of his wife's dower rights under the state law. Under the law of Kentucky (Ky. St. 1922, §§ 1706, 2135), the execution of a mortgage by husband and wife on the property in which a homestead right exists is a waiver of homestead rights, as well as the dower rights of the wife in the particular tract mortgaged. Under the well-settled law of Kentucky, however, this waiver operates only in favor of the mortgage creditor. In the enforcement of the mortgage, the tract covered by the mortgage may be sold free of homestead rights and of the dower rights of the wife, but, if there are any proceeds of the sale left after satisfying the mortgage lien, a homestead of $1,000 should be paid to the husband out of the excess, and, if any proceeds are left after satisfying the mortgage lien and the homestead, the wife's dower interest must be figured in the remainder. This does not mean, however, that she is entitled to have the value of her dower interest in the *entire* tract in such a

324

case paid out of the remaining proceeds. She is entitled to her dower interest only in such remainder. See Mulligan v. Mulligan, 161 Ky. 628, 171 S. W. 420; Kentucky Statutes, § 1706; Nelson v. Dunn, 215 Ky. 292, 284 S. W. 1084.

The referee should enter an entirely new order of sale, and direct the 300-acre tract to be sold free of the bank's mortgage lien, of the husband's homestead rights, and of his wife's dower rights. The order should provide that out of the proceeds of the sale the bank's mortgage shall be first paid; that a homestead of $1,000 shall be paid to the husband out of any remaining proceeds, if there be any; and that if, after deducting the mortgage lien and the homestead of $1,000, there remain any proceeds of the sale, the wife shall be paid the present value of her dower interest in such remainder.

**UNITED STATES v. BUTLER HOTEL CO., Inc., et al.**

District Court, W. D. Washington, N. D. March 23, 1929.

On Further Hearing, April 8, 1929.

No. 636.

