CHANCERY.

## Bartlett *vs* Gouge.

ERROR TO THE GRANT CIRCUIT.

Case 42.

*Dower.   Trustees.*

Oct. 11.

JUDGE MARSHALL delivered the opinion of the Court.

Object of the bill.

THIS bill was filed by Catharine Bartlett, for the purpose of obtaining dower in a tract of 600 acres of land, which had been conveyed by her deceased husband, Joel Bartlett, to the defendant, Gouge, during the coverture. The claim was resisted, on the ground that Bartlett had held the title only in trust for Gouge, and had no benificial interest in the land, which would entitle the widow to dower.   And whether this ground is sufficiently made out to authorize the decree dismissing the bill, is the only question in the case.

Facts of the case.

It appears, that as early as 1815, Gouge was living on the land, and the legal title being then in the heirs of Bernard Todd, residents of Virginia, Philip G. Todd, one of those heirs, who was attorney in fact for the three executors of Bernard Todd, authorized by his will to sell the land, contracted with Gouge for the sale and conveyance of said 600 acres, at the price of fifty cents per acre, and gave him a bond for conveyance, when the price should be paid, of which one half was then received. The bond contains the following description of the land, viz: Beginning at the west corner of the original survey, at a white oak, sugar tree and linn; thence with a line of the same, north 50 east, crossing the Dry Ridge road, and · continuing the course so far as will include said Gouge's improvement; thence such a course as shall cross the road at the south end of said Gouge's improvement, and continuing that course to Meriwether's line of said tract.

Bartlett seems to have been a clock-pedlar, resident in Virginia, but who came frequently to Kentucky in the way of his business, and seems to have been here in 1828.   In 1829, he received a deed from Philip G. Todd,

as attorney for the heirs of Bernard Todd, for the 600 acres of land now in controversy, which was described in the deed in precisely the same terms as in the bond to Gouge, without addition or alteration. This deed also contained a special warranty, such as is called for in the bond; but it states a consideration of $600 instead of $300, as mentioned in the bond. In 1831 or 1832, Bartlett was married to complainant. In 1833 he conveyed the land to Gouge, under precisely the same description as is contained in the bond and deed from Todd; but for the alledged consideration of $600, and with a general warranty; and in 1834, he died. It may be remarked, that the testimony does not establish with absolute certainty, the identity of Bartlett, the husband of the complainant, with Bartlett the grantee in one, and grantor in the other of the deeds above noticed. But assuming this to be sufficiently certain: it is also certain that Bartlett had notice of Gouge's equity when he took the deed from. Todd. For not only was the possession of Gouge sufficient to fix the notice on him, but the deed itself refers to his improvement, denoting possession. And moreover, the identity of the description in the bond and deed, renders it almost certain that the one was copied from the other. Bartlett, therefore, took the title, subject to the equity of Gouge, and so held it when he was married. And his subsequent deed in obedience to that equity, passed the title free from the dower claim of his wife, which indeed never attached, but in subordination to the right of Gouge to complete his purchase, by paying up for the land, if he had not done it before, and receiving the title. And in this view, the decree is sustained in principle, by the case of *Oldham* vs *Sale, &c.*, (1 *B. Monroe,* 76.) But the circumstances which have been stated, authorize an inference more decisively fatal to the claim of dower, than that which arises from the mere fact, that Bartlett had notice of Gouge's equity, and that is, that Bartlett being a resident of Virginia, and as the deeds state, of the same county in which Todd resided, and being occasionally in Kentucky, in the pursuit of his business of pedling clocks, may have undertaken to procure the title of this land from Todd for Gouge. And the

BARTLETT
vs
GOUGE.

excess of the consideration stated in the deeds, above the original price, with the interest on so much of it as remained unpaid, may be accounted for in part, perhaps by the great enhancement of the land in value, and in part with a view to the compensation claimed by Bartlett. And he was secured by taking the title to himself. The description of the land in the deed renders it certain that Todd knew he was conveying land which he had sold to Gouge, and that Bartlett knew the same thing. In the absence of proof to the contrary, it may be presumed from the circumstances referred to, that they were then dealing with the subject, in reference to the rights of Gouge, in subordination to them, and if not with his previous consent, that the title should come to him in this manner, at least with the intention that it should be conveyed to him upon his doing equity.

It is said that the bond of Todd to Gouge, is not properly evidence in the case, because it was objected to, and its execution was not proved. But on looking into the pleadings and the exceptions to the bond as evidence, we are of opinion that it was not intended to question its genuineness which is impliedly admitted, but to question its relevancy and effect, and on this ground its admissibility as against the complainant. Besides this, its genuineness derives confirmation from several circumstances apparent on its face, from a comparison with the deeds subsequently made, and from the fact that the land by the same description, was conveyed by Todd to Bartlett in 1829, and by Bartlett to Gouge in 1833, for a consideration greatly below its value.

Where the facts and circumstances show that the husband merely received a title to land as agent or trustee to make it to another, who was in possession when he received a deed, the widow of such agent is not entitled to dower.

Why was Gouge suffered to remain in possession so long by the title holders? And why did Bartlett, a clock-pedlar, domiciled in Virginia, but itinerant in his business and character, purchase in 1829, a tract of land which had been in the possession of another for many years? Did he seek a home for permanent residence? He was not then married, and he never before or after marriage, indicated a disposition to settle on this land, or even in Kentucky. Besides, he knew the land was already the home of another, and that in attempting to appropriate it, he would be involved in a law suit. Did he buy the

land or the law suit on speculation?   Then why did he
convey the land four years afterwards, for the same price
that he had given, and for less than its value, without any
effort, as far as appears, either to get more for it, or to
obtain, or even claim the possession?   We think the ra-
tional deduction from all the facts is, that he took the title
in order to convey it to Gouge, according to a previous
understanding, by which he was to have compensation for
his agency.   And that his warranty of the title was, in
effect, nothing but a guaranty that he had received the
title of the Todds, which, with the possession of Gouge,
made a safe title.

Wherefore, the decree is affirmed.

*Cates & Lindsey, and McCann* for plaintiff: *Payne*
for defendant.