Chief Justice Simpson
delivered the opinion of the Court.
Edmund Harris, deo’d., was the owner of a tract of land containing about one hundred and sixty acres, which had been conveyed to him in the year, 1837.
In 1841, he purchased from John G. Hoieman another tract of land, containing about two hundred and fourteen acres, at the price of two thousand dollars. Hole-man, at the time of the sale, held a bond for a conveyance on Samuel B. Petty, in whom the legal title still remained, which bond had been executed to Browning, and was transferred to Ploleman after having passed through the hands of several intermediate purchasers.
Petty conveyed the legal title to Harris, and the latter undertook to pay to Petty, out of the purchase money due to Hoieman, about the sum of one hundred and ninety dollars of the original purchase money which was still due and unpaid, and to pay the remainder of the two thousand dollars to McClure and McBrayer, to whom Hoieman owed that amount, and executed his notes to each of the parties, according to the agreement. To secure the payment of these debts, Plarris executed a mortgage on the two hundred and fourteen acres of land purchased from Hoieman, and also upon the tract of one hundred and sixty acres which previously belonged to him, but his wife did not join her husband in executing the mortgage.
A suit to foreclose the mortgage was subsequently instituted, and a decree having been rendered to sell the mortgaged property, and a sale made in pursuance thereof, both tracts of land were purchased by McClure and McBrayer, at the price of eight hundred dollars. *262 They then sold the one hundred and sixty acres to a man by the name of Ash, at the price of one thousand dollars; he agreed to take the title sold by the commissioner and accept his deed, and McClure and McBrayer were not to be responsible, in any manner, for the title to the land purchased by him. The sale under the decree was made in the year 1843; and shortly after-wards, Ash was placed in the possession of the tract of land sold to him. Harris continued to reside upon the other tract as long as he lived. In February, 1845, after his death, McClure obtained from Edith Harris, his widow, an instrument of .writing in which she bound herself, “to make a general warranty deed to the farms and lands her husband, E. Harris, mortgaged to McClure and McBrayer, at any time she was called on, in consideration of the small amount of rents she was to give for the property that year.” The same writing recited that McClure had leased to her the residence of E. Harris, dec’d., where she then resided, including the farm and mills for the year 1845, for which she was to repair and make good, all the fencing on the farm, and make and put in good head-gates to the mill race, and repair and .keep the race in good repair during the year. And if the mills were sold during the year, to surrender the possession of them and the houses adjacent thereto, which however, was not to lessen the rents. The mills were sold by McClure during the year, at the price of six hundred dollars, and possesion was given to the purchaser.
The pleadings of the parties.
In 1847, Edith Harris, the widow, exhibited her bill in chancery in this case, claiming dower in both tracts of land, in which she alleged that the aforesaid writing binding her to convey the mortgaged lands, was procured by fraud, and executed by her without a knowledge of its contents, or the most remote idea that in it, she pi’omised to surrender her right of dower in any of her husband’s lands. She made the mortgagees, and the purchasers of the mills and of the one hundred and sixty acres, and the heirs at law of her deceased hus *263 band, parties to the suit. McClure and McBrayer denied the alleged fraud in procuring the execution of said writing, and contested her right to dower, independently of the writing, in the tract of two hundred and fourteen acres, upon the ground that the purchase money had never been paid by her husband.
. The decree of the Circuit Court.
The Court below, decided that the widow v^as not entitled to dower in the last named tract, but was entitled to dower in the tract of land purchased by Ash, and as the purchase money paid by him had been received by MeClure and McBrayer, that the widow might at her election, have the value of her dower in the Ash tract of land, assigned to her out of the other tract, and she having elected to take her dower in the tract upon which she resided, in lieu of her dower in the tract of land in the possession of Ash, it was assigned and decreed to her according to her election. From that decree McClure and McBrayer have appealed, and the widow by her cross errors contends, that the Court erred in not decreeing to her dow.er in both tracts of land.
The validity of the writing executed by the-widow, is the first question to be'determined. A most remarkable feature in this transaction is the total inadequacy of the consideration. The only consideration specified in the writing itself, and the existence of no other is even suggested, was the small amount of rent she was to pay for the farm during the year, 1845. The farm was worth a rent of about fifty dollars, and the value of the improvements that she agreed to make was equal to at least half that amount. So that she was to surrender all claim to dower in her husband’s lands for a sum not exceeding twenty-five dollars, and if she were entitled to dower in the land upon which she resided, for a much smaller sum, or rather without any consideration whatever, as in that case she would be entitled to the possessions of it free of rent, until dower was assigned to her. The language used in the writing is also peculiar. She was to make a general warranty *264 deed to the farms and lands her husband morgaged to M’Clure and McBray, at any time she was called on.” There is nothing said in the writing about her dower right, nor is her interest in the land mentioned. The subscribing witness did not hear the writing read over, or know what its contents"were. Another witness who was present all the time deposes that nothing was said by the parties about the sale or relinquishment of the widow’s dower, but the contract related aloue to the rent of the farm. The widow alledges that she made on agreement to sell or convey her dower interest in the land, that the contract was confined to the renting of the farm, and that part of it, binding her to make a general warranty deed to the lands was never read to her. There is no testimony of any negotiation between the parties in reference to the sale of her dower right in the lands. And we are satisfied, if the instrument of writing were read to her, that she did not comprehend the meaning of the language used in it, and if she had understood its legal effect that she would never have executed it. We think therefore in view of the circumstances mentioned that it was properly disregarded by the Court below.
The right o f a in lands or sub-lien Tnhe* vendor of (he land held bd herhua-band but when the husband ob. fains a conveyance and gives his notes t o those persons & a mortgage upon the land to secure their payment his widow i s entitled t o dower.
*264 The right of the widow to dower in the tract of one hundred and sixty acres in the possession of Ash, is clear and indisputable. Her right to dower in the land purchased by her husband from Holeman, and conveyed to him by Petty, depends first upon the question whether or not the creditors of the vendor, to whom the ven-dee executed his notes, had the vendors lien upon the land for the payment of the purchase money; and in the second place, if no such lien existed, did the execution of the mortgage by the husband to the vendors creditors have the effect of depriving the wife of dower as against rights under that mortgage.
The wife’s right of dower, is subordinate to the ven- . cjors lien for the purchase money, because the lien is coeval with the husband’s right to the land, and he acquires his title subject to the lien. As the title and *265 the hen originate at the same time, the husband never has any right either equitable or legal unincumbered by the lien, and the wife’s right of dower is therefore subject to the same incumbrance. But where no lien for the purchase money exists, and the husband acquires a clear and unincumbered title to the proper, the right of the W'ife to dower, is not affected by the fact, that the original consideration has not been actually paid.
The acceptance of other or additional security by a vendor of land, is a waivor of his lien- Collard vs Seam-mond. 9 B. Mon. 265.
Where a vendor conveys and takes a mortgage of the same date as the deed o f convey anee, there is such seizin i n the husband as entitles li i s wife upon his death, to dower in the knd: (Tlvcs vs HUele, 4 Mon. 339.)
*265 In this case, the purchaser paid the purchase money so far as the vendor was concerned, by the execution of his notes for the amount, to the vendors creditors. No responsibility for the amount rested upon the vendor; his debts were paid, and so far as he was interested in the transaction, the effect was the same, that it would have been, bad the purchaser, instead of executing his notes to the creditors, paid them the amount in money. The vendors lien therefore was extinguished, and was not transfered by operation of law to his creditors, nor was there any contract between the parties, that the creditors should have the benefit of the lien to secure the payment of their debts. Indeed it is apparent that they did not rely upon it, as they procured the vendee to execute a mortgage for that purpose upon that, and also another tract of laud, which would have amounted to a waiver of the lien, if the debt had still been due to, and the arrangement made with the vendor.
The acceptance of other or additional security by a vendor, amounts to a waiver of his equitable lien. That no lien exists where a purchaser executes his note to a third person, at the instance of his vendor, was decided in the case of (Collard vs Seamonds, 9 B. Monroe, 265,) which is an authority expressly applicable to this case
Unless therefore the execution of the. mortgage by the husband, in view of the circumstances, under which it was made, precludes the wife from asserting a claim to dower in opposition to the rights eonfered by it, she is entitled to dower in the land conveyed by' Petty, to her husband. The deed to the husband, and the movt* *266 gage which he executed bear the same date; and although it is not proved expressly, that the deed was made by an agreement, that the mortgage should be immediately executed, it may be fairly inferred, that such was the fact.
Lindsey and Hard for plaintiff's Kavanaugh for defendant.
The effect of a deed and mortgage executed under such circumstances, has been the subject of conflicting adjudications. It has been held, that the husband was not sufficiently seized by such an instantaneous passage of the title, in and out of him, to entitle his wife to dower against the mortgagee: (Maberry vs Brien &c., 15, Peters, Rep. 22; Stowe vs Tift, 15, John Rep. 485; Clark vs Mier, 14, Mass. Rep. 352.) On the other hand, it has been decided by this Court, in the case of (Tevis vs Steele, 4 Monroe 339;) which was a case, substantially similar to the present, that the husband was beneficially seized, and the wife entitled to dower. That case establishes the doctrine, that instantatneous seiz-in, is not, per se inconsistent with the clai m of dower but that any beneficial interest, in the husband no matter how slight or fleeting, will create a right of dower ; denying it only where the grantee performs the part of a trustee, and is the medium merely, through which an interest passes to other persons. The case was decided upon mature deliberation, and after a careful examination of the conflicting opinions of other Courts. We consider the question therefore authoritatively settled in favor of the.right to dower, and that consequently Mrs. Harris is-entitled to dower in all the land embraced in. the mortgage. The decree rendered was therefore to her prejudice, and must be reversed upon her cross errors.
Wherefore the decree is reversed upon the cross errors of the defendant, Edith Harris, and cause remanded, that dower may be assigned her in’ both tracts of ■land, and for further proceedings for that purpose, consistent with this opinion.