Babcock, J.
By the pleadings and agreements as to facts it appears that plaintiffs’ property abuts the public highway near the city of Cleveland and not within any municipality; that it is well improved, with dwelling, out-buildings, shade trees, shrubbery, lawn and driveways, and so landscaped that a substantial change in the grade of the street will injure their property. The highway was paved with brick about three years ago, and upon the-grade at which it has been maintained for more than fifty years. The defendant is constructing a railroad across the highway and has entered into a contract with the county commissioners for *162 raising the highway eighteen feet at the point of intersection, and with approaches sloping to the present grade in front of plaintiffs’ property. This embankment, if constructed under the contract, will, in its highest place, raise the grade of the street about nine feet in front of plaintiffs’ land and will materially interfere with ingress and egress therefrom. It is agreed that this will cause a substantial damage to plaintiffs, and provision is made in the contract with the commissioners for the payment of it by the defendant.
The question is .thus presented: Are the plaintiffs entitled to an injunction restraining the defendant from making this embankment in front of their property f This depends upon the answer to one or both of the following questions: First, was the contract with the commissioners illegal; and, second, does this involve the taking of property for which compensation must be first made under Article I, Section 19 of the Constitution ?
The contemplated crossing is within the provisions of Section 3337-17,7 et seq., Revised Statutes, which forbid the construction of crossings at grade, unless by permission of the common pleas court in pursuance of Sub-section 17m. These sections are as follows:
Section 3337-17j. “Except as in this act elsewhere provided, all crossings, hereafter constructed, whether of highways by railroads or of railroads by highways, shall be above or below the grade thereof.”
Section 3337-17k. “Every railroad company constructing a new line of railroad, under its charter powers, across a highway, shall construct the same above or below the grade of the highway, unless permitted in the manner hereinafter provided, to construct the same at grade; and such railroad company may. exercise the power contained in its charter and the general laws, for altering the grade and location of highways in order to avoid grade crossings.”
The Sub-section 17m above referred to provides that a railroad company constructing a new railroad, if it so desire, may petition the common pleas court for permission to cross the highway at grade, and the court in its discretion may permit the ■same, and prescribe the proper safe-guards for such crossing.
*163 These sections make provision for new lines of railroads crossing existing highways above or below their grade, and to accomplish the same they provide that the grade of the highway may be changed. The statute declares how this may be done: “And such railroad company may exercise the power contained in its charter and the general laws, for altering the grade and location of highways in order to avoid grade crossings.
“The general laws” provide for changing the grade of the highway to avoid a grade crossing already existing, and the section quoted extends their provisions to- crossings to be constructed so as to avoid the dangers of collision.
Section 3337-8, Revised Statutes, provides for abolishing existing grade crossings, and is as follows, omitting irrelevant matter: '
•“If * * * the commissioners of any county in which, outside of any municipal corporation, a railroad or railroads and any public road or highway cross each other at grade, and the directors of the railroad company or companies are of the opinion that the security and convenience of the public require that alterations shall be made in such crossing, or in the approaches thereto, or in the location of the railroad or railroads, or the public way or any grades thereof so as to avoid a crossing at grade, * * * and if they agree as to the alterations which should be made, such alterations may be made in the following manner:”
Section 3337-9, Revised Statutes. “Where it is deemed necessary * * * by any county to join with any railroad company or companies in the alteration or abolition of any grade or other crossing * * * the commissioners of the county, by unanimous vote of all the members thereof, shall, by resolution. declare such necessity and intent, and shall state in such resolution 'the manners in which thé alterations in the crossing shall be made, giving the method of constructing 'the new crossing with the grades for the railroad or railroads and the public way or ways; also what land' or other property it is necessary to appropriate, and how the costs thereof shall be apportioned between the municipality or county and the railroad company or companies; also by whom the work of construction is to be done and how the cost thereof shall be apportioned between the municipality or county and the railroad company *164 or companies. Such resolution shall be published and notice of its passage given to owners of property abutting on the proposed improvement in the manner provided in Section 2304 of the Revised Statutes, and all claims for damages by reason of such improvement, must be filed in the manner and within the time provided by Section 2315 of the Revised Statutes.”
These sections provide a complete plan of procedure for avoiding grade crossings. The public is safeguarded in many ways. The commissioners must by a unanimous vote of all the members thereof declare by resolution the necessity and intent to abolish the grade or other crossing, and state in the resolution the manner in which the same is to be made. The resolution shall be published and notice of its passage given to owners of property abutting on the proposed improvement, and a limitation is fixed by statute for all claims for damages by reason of such improvement, to be filed as provided in other cases of damage claimed for street improvements.
The commissioners are required by resolution to set forth the plans and specifications of the proposed alteration or improvement, with a statement of the damage claimed then or likely to accrue by reason thereof, how they are to be appor-' tioned between the county and the railway company, also who shall supervise the work of construction. Upon the acceptance of such resolution by the railway company, it shall constitute an agreement which shall be valid and binding on the county and the railway company, with the further provision that the agreement shall be filed in the court of common pleas of the county in which the crossing is located, and thereupon have the same force and effect as a decree of court. Provision is also made for the appropriation of land, if found necessary, and the apportionment of the cost of construction of the improvement, including cost of such land as may be either purchased or appropriated, together with provision for payment of damages to abutting property. This method of procedure is extended to crossings to be constructed in the future by express provision of the statute. It is not claimed that these provisions have been complied with. The contention is, first, that the commissioners are vested with the control and authority over roads and *165 highways 'in the county and not within municipalities, and that they have implied powers incident to those expressly delegated in the exercise of which they may depart frQm the procedure fixed in the statute; and, second, that Section 3283, Revised Statutes, authorizes the making of the contract.
It is true the commissioners are a quasi corporation. They have from the earliest times been vested with the control of the highways. The delegation of power to them has at all times' been very general, and they have been allowed to exercise implied powers necessary to carry those expressly delegated into execution, but such implied powers exist only ex necessitate. Where the, procedure is provided by statute there can be no necessity to improvise one in order to carry the general authority into effect. .
In Commissioners of Gallia Co. v. Holcomb, 7 Ohio, part 1, page 252, the commissioners sought to maintain an action against one Holcomb, a raftsman, for destroying a bridge on the highway over a stream. The court held that as no such power was conferred by statute, and as it was not necessary to carry into effect those expressly conferred, it did not exist.
Says Wood, J.:
“Counties, townships, etc., are quasi corporations (7 Mass., 169); and instead of having more enlarged powers than a corporation proper, they are, it is said, more restricted and liable to responsibilities from which corporations proper are exempted. # # * The ease ma(je in this declaration is not, in express terms, provided for in this statute. The inquiry, then, is, can it be necessary as an incident to the very existence of this quasi corporation, or to the complete discharge of the powers, duties and obligations conferred upon it by law, that it should have the authority to sustain an action for the willful or negligent destruction of a public bridge; for where such necessity does not exist, a power not granted in express terms can not be conferred by implication. 4 Pet. (U. S.), 543.”
The statute then in force authorized commissioners to make contracts in relation to the building and repairing of bridges, and conferred power to sue and be sued in matters of contract for the erection or repair of bridges and other enumerated public works. The court further says:
*166 “Unless such power is expressly given by tbe act, is necessary to the complete performance of some duty conferred upon them by law, or is incidental to their very existence, it can not be exercised. The county commissioners have neither the property, possession, nor right of possession in a public bridge. # * * The most they can do is to appropriate money from the county treasury, in certain cases, and enter into a contract to build or repair a public bridge; * * * no remedy seems to be given by civil action, either to the commissioners of the county or any other person. Unless, then, some person can be found who has either that general or special property in a public bridge that will enable him, on common law principles, to sue for an injury to it, no action can be maintained. Whether the law has provided that person it is not necessary to decide, but it is clear to us that the plaintiffs have not that power.”
This case is commented on with approval in Commissioners v. Mighels, 7 O. S., 110, and is followed in many subsequent eases in this state, being universally approved.
In State, ex rel Baen, v. Yeatman, etc., 22 O. S., 546, the question arose as to the legality of a contract between the county commissioners of Hamilton county and the relator for the recopying of the plats of the county for use in the auditor’s office. There was no statutory authority claimed for the making of the contract, but it was contended that in the absence of delegated authority the commissioners possess the power in question as a necessary consequence of their relations to the public. Meld:
“A contract of county commissioners for the re-copying of plats of the county for use in the auditor’s office, the estimated expense of which exceeds five hundred dollars, under the second section of the act relating to the duties of county commissioners, as amended March 9, 1866, is void, as against the county, unless it be made with the lowest possible bidder, in accordance with the provisions of that section.”
Says Day, J., on page 553:
“If it be conceded, then, that the commissioners had the power to make the contract in question at all (which we do not decide) it can only be done in accordance with the provisions of this section, as it contemplated an outlay of more than five hundred dollars. The statute was disregarded, and *167 by its express provisions, the contract was, therefore, void as against the county.”
“County commissioners are restricted to the exercise of powers expressly conferred upon them by statute.” County Commissioners v. Leighty, 1 C. C. — N. S., 431.
“County commissioners can exercise no powers not expressly conferred by statute, and where the law directs what shall be done preliminary to the expenditure of public money, injunction will lie to restrain such expenditure until the preliminary steps have been taken. The office of county commissioner is a creature of statute, and the incumbent thereof can exercise no power nor do any act in his official capacity which will" bind the county unless expressly authorized and done in the manner provided by statute.” State v. Snyder, 2 N. P.— N. S., 261.
“The courts have a right under the statute, where officials are proceeding- to make an illegal contract, to interfere and enjoin.” Commissioners v. Pargillis, 10 C. C., 376.
The foregoing principles are elementary, and, applied to this case, establish the illegality of this contract on the ground that the commissioners departed from the statute declaring how the grade of a highway may be changed so as to avoid a railroad crossing at grade, unless Section 3283, Revised Statutes, is applicable to railroad crossings and furnishes an authority to commissioners to contract for the same. This section provides :
“If it be necessary in the location of any part of a railroad, to occupy any public road, street, alley, way or ground of any kind, or any part thereof, the municipal or other corporation or public officer or authorities owning or having charge'thereof and the company may agree upon the manner, terms and conditions upon which the same may be used or occupied;” etc.
This section was passed in 1856, and no further legislation on the subject of the occupancy of streets and highways by railroads was passed, it is believed, till 1895, when the work of abolishing grade crossings was entered upon and the plan for their removal was fixed in the statute. In 1904, the General *168 Assembly went further and forbid any new crossings at grade, unless by consent of the court of common pleas, with proper safeguards to minimize the dangers. Neither of the recent acts expressly repeal the act of 1856, and, covering only a part of the same subject, there was evidently no intention to repeal it as a whole. The question then is: Are they concurrent and equal in authority as regards the manner of making railroad crossings, or does the subsequent legislation control? It is admitted by the defendant that the power is taken aivay to agree upon the manner of making the crossing to the extent of making it at grade; but in other respects it is claimed the earlier statute is not modified. If modified at all, it is upon the ground that they are inconsistent and irreconcilable. This irreconcilability goes as well to the steps to be taken and the terms and conditions of making the crossing as to the manner of its construction, and if the statute forbidding crossings at grade limits the previous statute in that regard it also modifies the statute as to the procedure to be employed, and for the reason that the procedure last provided can not be reconciled with that previously employed. To hold otherwise is to set at naught, in part at least,- the safeguards recently provided to protect the lives and limbs of the people of the state. This would be to violate the rules of statutory construction. Says Hitchcock, J., 1 Ohio, 10:
“It is a well settled rule that when the law enacts a thing to be done different from the same thing required by a former law, the first thereby becomes repealed without any direct expression of such intention by the law-making power. * * * Upon general principles of universal law an old statute gives place to a new one. 1 Blac. C., 89.”
“ If a subsequent statute is not repugnant in all its provisions to a prior one, yet, if the latter statute clearly intended to prescribe the only rules which should govern, it repeals the prior one.” Daviess v. Fairbairn, 44 U. S., 636.
“And even where two acts are not in express terms repugnant, yet, if the latter act covers the whole subject of the first and embraces new provisions plainly showing that it was intended as *169 a substitute for the first act, it will operate as a repeal of that act.” U. S. v. Tymen, 11 Wall., 92.
“If a statute give a remedy, or provide that certain acts shall be sufficient for the attainment' or security of certain objects, and a subsequent statute declares- that a part of the same remedy or some of the same acts, or other-acts entirely different, shall suffice for the accomplishment of the same object, here the latter act does not necessarily -repeal the former, except so far as it may be expressed or implied in the former that the end shall be attained by no other, mode but that which it prescribes. If there be no such restriction in the- first, there is no conflict between them. Both may stand together with full effect, and the provisions of either may be pursued. But if a subsequent statute requires the same, and also more than a former statute had made sufficient, this is in effect a repeal of so much of the former statute as declares the sufficiency of what it prescribes. And if the last act profess, or manifestly intends to regulate the whole subject to which it relates, it necessarily supersedes and repeals all former acts, so far as it differs from them in its prescriptions. The great object, then, is to ascertain the true interpretation of the last act. That being ascertained, the necessary consequence is, that the legislative intention thus deduced from it must prevail ov$r any prior inconsistent intention to be deduced from the previous act.” Gorham v. Luckett, 44 Ky., 154.
“Without a repealing clause the two (acts) may stand and have effect together, unless they are inconsistent; and in that case, to- the extent of the inconsistency, the latter will repeal the earlier; but even then the two must- be given effect so far as practicable.” Cooley, Taxn., 294.
“If one statute enacts something- in-general terms, and after-wards another statute is passed on the same subject, which, although expressed in affirmative language, introduces special conditions or restrictions, the subsequent statute will usually be considered as repealing by implication the former; for ‘affirmative statutes introductive of a new law do imply a negative.’ ” Black, Interpn. of Law, p. 115.
This rule, thus stated by courts and text-writers, forbids resort to the earlier statute for authority to construct railroad crossings, for the reason that the act for abolishing existing grade crossings and the latter one -forbidding new ones to be *170 made, purport to and are manifestly intended to regulate the whole subject of railroad crossings in this state. To hold otherwise would be to defeat the manifest intention of the General Assembly. The contract entered into by the railroad company and the county commissioners for making this crossing is therefore illegal, because the procedure fixed by statute was not followed. The contract being illegal, the remedy of the plaintiff is plainly by injunction.
W. H. Boyd, for plaintiffs.
Kline, Tolles & Goff, for defendant.
It is not necessary to consider the constitutional question, and as to it no opinion is expressed. The prayer of the petition is granted, and the injunction is made perpetual.