## Oster's Exor., et al. v. Ohlman, et al.

(Decided March 5, 1920.)

.Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Executors and Administrators—Husband and Wife—What Law Controls Widow's Right to Exempt Personal Property.—The widow's exemption rights to personal property are controlled by the law in force at the time of her husband's death, and not by the law in force at the time of her marriage.

2. Descent and Distribution—Executors and Administrators—Husband and Wife—Widow's Exemption—Renunciation of Will—Statutes.—Under the present exemption statute a widow, there being no infant children, is entitled to money or other personal property of the value of $750.00, and this statute applies where the widow renounces the provisions of the will in the time prescribed by law.

3. Executors and Administrators—Husband and Wife—Widow's Exemption of Personal Property—Right of Widow to Judgment Against Executor.—Where the husband's executor has on hand a sufficient amount of money to pay the widow's exemption, but fails to do so, she may recover judgment against the executor.

4. Executors and Administrators—Husband and Wife—Widow's Exemption—Right of Widow to Recover Interest From the Estate—Executor's Liability for Interest.—Where the husband's executor has on hand a sufficient amount of money to pay the widow's exemption, but fails to do so, the estate is not properly chargeable with the interest, but if the case is one where interest should be charged; it should go against the executor individually.

5. Executors and Administrators—Exempted Property—Payment of Debts—Personal Liability of Executor—Subrogation.—Where personal property exempted to the widow has been used by the executor for the purpose of paying her husband's debts, the widow's judgment is not collectible out of the real estate of her husband, but is a personal liability of the executor, who, upon a sale of the real estate, will be subrogated to the rights of the creditors whose debts he paid.

6. Descent and Distribution—Right of Widow to Mansion House and Rents of Her Husband's Dowable Real Estate Before Assignment of Dower.—Until dower is assigned, the widow not only

has the right to occupy the mansion house free of rent, but is entitled to one-third of the gross rents of her husband's dowable real estate.

7. Insurance—Accident Insurance—Beneficiary.—Where the insured carried an accident policy payable to his wife, and directed that his son be made beneficiary upon the expiration of the policy, but died before the policy expired and the change was made, the proceeds were payable to his wife.

8. Partition—Sale of Real Estate—Right of Widow to Maintain Action.—Under Civil Code, section 490, subsection 3, providing that a vested estate in real property may be sold by order of a court of equity, "if the estate shall have passed by devise or descent to the widow and heir or heirs of a decedent, and the widow shall have a life right in a portion thereof, either as homestead or dower or by devise, and the said property can not be divided without materially impairing its value or the value of the plaintiff's interest therein," the widow may maintain an action against her husband's executors and heirs for a sale of her husband's real estate.

9. Executors and Administrators—Sale of Real Estate—Suit for Settlement—Right of the Widow, Who is Also a Creditor, to Sue for a Settlement and Sale of Real Estate.—Where more than six months have elapsed since the qualification of the personal representative, the widow, who is also a creditor, may bring an action for the settlement of her husband's estate, and for a sale of his real estate on the ground that his personal property was not sufficient to pay his debts.

10. Executors and Administrators—Suit for Settlement—Sale of Real Estate—Right of Widow and Creditor to Have Attorney's Fee Paid Out of the Estate.—In such a suit the estate of the husband should bear the cost of a reasonable attorney's fee, where it appeared that the executor would not settle, that there were other creditors besides the widow, and that a suit for settlement was necessary.

11. Husband and Wife—Liability of Husband for Wife's Physicians' Bills and Burial Expenses.—While the husband is primarily liable for the physicians' bills and burial expenses of his deceased wife, he is only liable where the medical services were rendered or her death took place during his lifetime.

12. Executors and Administrators—Liability of Estate for Publishing and Mailing Cards of Thanks.—Since cards of thanks are published and mailed at the instance of the relatives of the deceased for the purpose of expressing their appreciation of the kindness and attention shown by sympathetic friends, they constitute no part of the funeral expenses, and the expense thereof is not a proper charge against the decedent's estate.

13. Executors and Administrators—Liability of Estate for Lunch Served to Those Who Participated in Wake.—The reasonable expense of a lunch served to those who participated in a wake over

the remains of deceased constitutes a part of the funeral expense, and is therefore payable out of the estate.

14. Executors and Administrators—Liability of Estate for Carbon Copy of Depositions Taken On Behalf of the Executor.—In the absence of a clear showing that it was necessary for the executor to have a carbon copy of depositions taken by him in order that he might make proper defense to a suit against the estate, the expense of such copy should not be borne by the estate.

15. Executors and Administrators—Liability of Estate for Fee of Witness Who Appraised the Real Estate and Gave His Deposition. —The executor was improperly allowed credit for $17.50 paid to a witness for appraising the decedent's real estate and giving his deposition, no such appraisement being authorized by statute and the exigencies of the case not being such as to make such an appraisement necessary.

16. Executors and Administrators—Allowance of Attorneys' Fees.— The allowance of $400.00 attorneys' fees to the executor was reasonable and proper, the executor being entitled to the advice of attorneys and to their services in resisting claims against the estate, and in seeking to recover claims in favor of the estate, and their services to this extent being for the benefit of the estate.

17. Insurance—Beneficial Associations—Persons Entitled to Funeral Benefits.—The constitution and laws of a benevolent society provided that on the death of a member in good standing, his wife or legal heirs, as named on his application, should be entitled to the member's funeral donation, but if the member died without leaving any legal heirs, the local union should see him respectably interred. No one was named as beneficiary in the application, nor did the wife or heirs pay or become liable for the funeral expenses of the decedent. Held, that the order intended that the funeral donation should be first applied to the payment of the deceased member's burial expenses, and that the fund was impressed with a trust for that purpose.

18. Appeal and Error—Executors and Administrators—Costs—Personal Liability of Executor.—Counsel representing executor individually and in his official capacity, and counsel for the opposing side filed an agreed schedule, setting forth the parts of the record to be copied, and expressly eliminating volume 2 of the transcript. After the transcript was made in accordance with the agreed schedule, the executor ordered the clerk to copy that portion of the record contained in volume 2 of the transcript. Volume 2 had no bearing on the issues involved, and no reference thereto was necessary for the purpose of deciding any of such issues. Held, that the motion to tax the costs of volume 2 of the transcript against the executor individually should be sustained.

J. W. S. CLEMENTS and HUGH JOHNSON for appellant.

R. J. HAGAN, A. M. MARRET and AUSTIN WALSH for appellees.

Opinion of the Court by William Rogers Clay, Commissioner—Affirming in part and reversing in part on the original appeal, and affirming in part and reversing in part on the cross appeal.

Adam Oster, a resident of Jefferson county, was killed on May 29, 1915. Besides his widow, Barbara Oster, he left surviving him one son, Otto J. Oster, two daughters, Elizabeth Dewald and Amelia Schmidt, and a granddaughter, Lillian Malinda Oster, the daughter of a deceased son, all of whom were the issue of a former marriage.

By the terms of his will, Adam Oster gave to his widow, a widow's portion according to the law of Kentucky. He also bequeathed to his granddaughter the sum of $200.00 and to his son, Otto, the sum of $500.00. The remainder of his estate he devised to his son and two daughters in equal portions. His son was nominated and qualified as executor of the estate.

At the time of his death, the testator was the owner of personal property worth about $1,400.00, and two pieces of real estate, one on the corner of Ballard and Campbell streets in Louisville worth about $1,600.00, and the other on Market street in that city worth about $5,000.00. Besides an accident policy for the sum of $1,000.00, he carried certain benefit certificates which will hereafter be referred to. The claims against the estate, including funeral expenses, amounted to $1,132.11. Among the claims was a note of $200.00 to the widow dated November 9, 1912, and bearing interest from date until paid.

At the time of his death the testator and his wife were occupying the Market street property, and thereafter his widow continued to occupy the property until the month of March, 1916.

On March 21, 1916, the widow renounced the will in the manner provided by law.

Being unable to secure from the executor her dowable and distributable share of her husband's estate, the widow brought suit under section 428 of the Civil Code, against the executor and all parties in interest, for a settlement of the estate. Thereafter, she filed a reformed petition setting up her interest in the estate, and asked that the real property be sold, both on the ground that the personal estate left, by the testator was insufficient

to pay his debts, and that she and his children were joint owners of the property and the property could not be divided without materially impairing its value. Certain claims against the estate were allowed, while others were rejected, and on final hearing the real property was ordered sold, both on the ground of the insufficiency of the personal estate to pay the debts of the testator, and on the ground of indivisibility. From the various judgments, Otto Oster appeals, both as executor and as an individual, while the executors of Barbara Oster, who died during the pendency of the action, and Elizabeth Dewald and Amelia Schmidt prosecute a cross appeal.

The grounds urged for reversal on the original appeal will be considered in their order.

(1) Since the husband may consume or dispose of all his personal estate without the consent of his wife, it necessarily follows that the wife has no vested estate in the personal property of her husband. That being true, no contract rights are involved and the legislature has plenary power to prescribe what portion of the husband's personal estate shall be exempted to the widow. Hence, the widow's exemption rights in personal property are controlled by the law in force at the time of her husband's death, and not by the law in force at the time of her marriage. Under the present statute, which was in force when Adam Oster died, his widow, there being no infant children, was entitled to money or other personal property of the value of $750.00, and this statute applies where the widow renounces the provisions of the will in the time prescribed by law. Kentucky Statutes, section 1403, subsection 5. Since the executor had on hand a sufficient amount of money to pay the widow's exemption, but failed to do so, it was proper to render judgment against the executor for the sum of $750.00. However, the estate is not properly chargeable with interest on this amount. If the case is one where interest should be charged, it should go against the executor individually. We may further add that if the executor has used the exempted property for the purpose of paying debts, the widow's judgment is not collectible out of the real estate of her husband, but is a personal liability of the executor, who, upon a sale of the real estate, will be subrogated to the rights of the creditors whose debts he paid. Franzell's Exor. v. Franzell, 153 Ky. 171, 154 S. W. 912.

(2)   Since no dower was assigned to the widow, she not only had the right to occupy the mansion house free of rent, but was also entitled to one-third of the gross rents of her husband's dowable real estate. Kentucky Statutes, section 2138; Morton's Exor. v. Morton, 112 Ky. 712, 66 S. W. 641.

(3)   A careful review of the evidence convinces us that the charge of waste made against the widow was not sustained.

(4)   At the time of his death, Adam Oster carried an accident policy in the Fidelity and Casualty Company, payable to his wife. After his death the proceeds were paid to Mrs. Oster. Otto Oster claimed the proceeds of this policy on the ground that he had been made the beneficiary. The evidence merely shows that Adam Oster directed that the change be made when the policy expired. Adam Oster's death took place before the policy expired and no change in the beneficiary was made. It necessarily follows that the policy was payable to Mrs. Oster, the original beneficiary.

(5)   The evidence leaves no doubt that Adam Oster borrowed $200.00 from his wife, and executed to her the note of November 9, 1912. It follows that the chancellor did not err in adjudging that the note was a valid claim against the estate.

(6)   There is no merit in the contention that the widow could not maintain the action for the sale of the decedent's real estate. In the first place the Code provides that a vested estate in real property may be sold by order of a court of equity, "if the estate shall have passed by devise or descent to the widow and heir or heirs of a decedent, and the widow shall have a life right in a portion thereof, either as homestead or dower or by devise, and the said property can not be divided without materially impairing its value or the value of the plaintiff's interest therein." Civil Code, sec. 490, subsection 3. In the next place the widow was a creditor of the decedent, and more than six months having elapsed since the qualification of the personal representative, she had the right to bring an action for the settlement of the estate, and for a sale of the real estate on the ground that the personal property was not sufficient to pay his debts. Civil Code, sections 428 and 429.

(7)   The attorneys for the widow were allowed by the commissioner a fee of $300.00, payable out of the estate of Adam Oster. On exceptions, the chancellor held that only $100.00 of this fee should be paid out of said estate, and that the remainder should be paid out of the estate of the widow who was then dead. It is argued that no allowance should have been made out of the estate of Adam Oster because the suit was solely for the benefit of the widow. It appears, however, that the executor would not settle, that there were other creditors besides the widow, and that a suit for settlement was necessary. To this extent the suit brought by the widow was for the benefit of the estate, and the estate should bear the cost of a reasonable attorney's fee. In our opinion, the amount fixed by the chancellor was altogether reasonable.

On the cross appeal numerous errors are assigned, which will be considered in the following order:

(1)   While the husband is primarily liable for the physicians' bills and burial expenses of his deceased wife, he is only liable where the medical services were rendered or her death took place during his lifetime. Here, Mrs. Oster died and the medical services were rendered after Adam Oster's death. It follows that there was no error in refusing to allow these claims against the estate of Adam Oster.

(2)   The expense incurred for publishing cards of thanks in the Louisville newspapers and mailing them to friends was not a proper charge against the decedent's estate. Such cards are published and mailed at the instance of the relatives of the deceased for the purpose of expressing their appreciation of the kindness and attention shown by sympathetic friends, and constitute no part of the funeral expenses.

(3)   It is insisted that the estate should not have been charged with the expense incurred for lunch for those who participated in the wake over the remains of the decedent. It is customary with some to have a wake, with others to have friends "sit up with the dead," and since those who perform this service are required to remain awake all night, it is likewise the custom to serve a lunch. Since they are present not merely to relieve the family, but to serve and protect the dead, it seems to us that any reasonable expense made necessary by their

presence should not fall on the family, but should be regarded as a part of the funeral expenses, and therefore payable out of the estate of the deceased. Here, the expense for the lunch was only $4.40, and being altogether reasonable, was properly allowed against the estate.

(4)  The next question is whether the item of $20.20 for carbon copy of depositions taken on behalf of the executor should have been allowed as a claim against the estate.  The carbon copy was furnished for the convenience of the executor, and no particular necessity therefor was shown.  It seems to us that the executor had no power to burden the estate with such an extraordinary expense in the absence of a clear showing that it was necessary for him to have a carbon copy of the depositions in order that he might make proper defense.  No such showing having been made, he should not have been credited with the item in question.

(5)  It appears that the executor was allowed credit for $17.50 paid to a witness for appraising the decedent's real estate, and giving his deposition.  No such appraisement is authorized by statute, and the exigencies of the case not being such as to make such an appraisement necessary, we conclude that the claim should not have been allowed against the estate.

(6)  The chancellor allowed a fee of $100.00 to the executor's attorneys, Selligman & Selligman, and a fee of $300.00 to William McKee Duncan, another attorney. The allowances are challenged on the ground that the services were not in the interest of the estate and the fees were excessive.  It seems to us that the allowances were both proper and reasonable.  The executor was entitled to the advice of attorneys and to their services in resisting claims against the estate, and in seeking to recover claims in favor of the estate, and to this extent their services were for the benefit of the estate.

(7)  The decedent, Adam Oster, was a member of four fraternal societies which paid certain benefits on the death of a deceased member in good standing.  The amount paid by the United Brotherhood of Carpenters and Joiners of America was $300.00, by the Independent Order of Odd Fellows, $50.35, by the Working Men's Association, $50.00, and by the German Soldiers' Society, $50.00.  It was held by the chancellor that these sums

should be applied on the decedent's funeral expenses, which were less than $300.00, and that the balance was payable to the widow's executors. The widow's executors contend that all of these benefits were payable to her estate. Since the widow was given the excess of all the funeral benefits over the funeral expenses, it follows that the judgment was not erroneous if the $300.00 benefit provided for in the constitution and laws of the United Brotherhood of Carpenters and Joiners of America should have been applied to the payment of decedent's funeral expenses. Section 48 of the constitution and laws provides in part as follows: "On the death of a member in good standing, his wife or legal heirs, as named on his application, shall be entitled to the member's funeral donation as prescribed in the constitution and laws of the United Brotherhood. If a member in good standing dies without leaving any legal heirs, the local union shall see him respectably interred. The officers or a committee of the local union shall attend his funeral and the United Brotherhood shall pay the funeral expenses, but in no case shall these expenses exceed the full amount of donation to which the member is entitled at time of death, nor shall the United Brotherhood be held liable for any further donations in the name of the deceased." By section 49 it is provided in substance that a beneficial member, who is in good standing, shall be entitled to a funeral donation of $300.00 after five years' membership or more. It appears that neither his wife nor his legal heirs were named as beneficiaries in decedent's application, nor did they pay or become liable for his funeral expenses. A careful reading of the constitution and laws of the order convinces us that the order intended that the funeral donation should be first applied to the payment of a deceased member's burial expenses, and that the fund was impressed with a trust for that purpose. Redmond v. Redmond, 112 Ky. 760, 66 S. W. 745; Stillman v. K. P., 84 N. J. Eq. 399, 93 A. 685.

A motion has been made by the widow's executors to have the costs of transcript No. 2 taxed against Otto J. Oster individually. It appears that counsel representing Otto J. Oster individually, and as executor of Adam Oster, agreed with the attorneys representing appellees as to what parts of the record should be copied for the appeal, and filed in the circuit clerk's office an agreed schedule setting forth the parts of the record to be copied

and expressly eliminating that portion of the record in volume 2 of the transcript. After the record was copied and the transcript was made in accordance with the agreed schedule, Otto J. Oster ordered the clerk to copy that portion of the record contained in volume 2 of the transcript. It does not appear that volume 2 has any bearing on the issues involved on the appeal; and no reference thereto was necessary for the purpose of deciding any of such issues. That being true, it seems to us that the motion to tax the costs of volume 2 of the transcript against Otto J. Oster individually should be sustained. With this exception, the costs of the appeal will be divided equally between appellant and appellee.

Affirmed in part and reversed in part on the original appeal, and affirmed in part and reversed in part on the cross appeal, and cause remanded for proceedings not inconsistent with this opinion. -