## Chalk v. Chalk et al.

Oct. 27, 1942.

704

Barbour & Bassmann for appellant.

Benton & Benton for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

This suit was instituted by Mrs. Julia Chalk against the children of her late husband, Jule Chalk, one of whom is also sued as executor, for a settlement of his estate. She has particularly sought the adjudication of her rights as widow under the statute of descent and distribution, which is in accordance with her husband's will. Her appeal is directed at parts of the judgment adverse to her claims.

The court adjudged that the decedent was the equitable owner of certain real estate on Highland Avenue, in Ft. Thomas, title to which was in Fred Chalk, his son, and that the widow is entitled to dower therein. It was, however, adjudged that her dower right is subordinate to a mortgage lien of the Favorite Federal Savings & Loan Association of Newport for $4,351.95, with interest from March 15, 1941, and an equitable lien of Fred Chalk for $7,623.29, with interest from various dates. The result was to deprive the widow of dower in that property. The appellant contends it was error to adjudge the decedent to have been only the equitable owner instead of the owner of the legal title, and asserts that the deed to appellee, Fred Chalk, operated only as a

mortgage on the property which does not diminish her dower rights. A part of the property had been sold in 1928 for $2,500. The appellant contends that she is entitled to have the equivalent of dower in that parcel allotted to her in other real estate since her inchoate right was never surrendered or conveyed.

It is argued that the placing of title to the property in the son, Fred Chalk, was a fraud upon the appellant's marital rights. There is no evidence of any actual intention to defraud except the testimony of a man and wife, friends of the appellant, that the decedent made statements about the time the property was purchased in 1928 that he intended to limit the amount of his estate which should go to his wife to her dower interest in his business property, and for that reason he had put title in the recently acquired property in Ft. Thomas in his son's name. Their testimony is not persuasive. The transactions between father and son from the beginning to the end are natural and induce the conviction of good faith. The mother of his three sons and two daughters died in 1926, and Chalk married the appellant in September, 1927. At that time the youngest child was a daughter about 13 years old. Chalk had been in the livery stable business in Newport, and with the exit of horse travel had converted his property and business into a garage. He and his sons ran this. There is no contradiction that the youngest boy, Fred, worked hard and saved his money. The family lived in the home in Newport until it was sold in June, 1928, for $12,000. In August, 1928, Chalk bought the Ft. Thomas property for the same amount. He had apparently used $2,200 of the proceeds from the Newport property for other purposes for he needed that sum to complete the payment. Fred agreed to let his father have the money if he would put the title in his name as security. Chalk's lawyer testified that in discussing the purchase he had suggested that title be placed in Fred and thereby avoid the payment of taxes on the debt. A residence was built on part of the property. At his father's request Fred loaned him the further sum of $1,600 and effected a loan for $5,500 from the Favorite Federal Savings & Loan Association with which to complete payment for the new building, which cost about $16,000. The family moved in it and, except the two daughters, who had married, were living there when Chalk died in October, 1939. The father always dealt with the property as his own. In October,

1930, Fred paid $400 for street improvement assessment against the property, and in 1938 delinquent and current taxes thereon, amounting to $532. During all the while he was making the stipulated weekly payments to the Savings and Loan Association on the mortgage debt. These aggregate $4,490.29. He was also advancing money for the payment of taxes on the garage property and lending his father different small sums from time to time. When he suggested the looseness of their transactions and the absence of evidence of his father's indebtedness, he executed notes for the various sums according to the dates they were advanced or loaned. The money had been withdrawn from Fred's savings accounts as is shown by the records. There is nothing to indicate any fraud or bad faith on the part of anyone. And under the view we have of the case there was no constructive fraud upon appellant's marital rights.

We consider the question of whether the widow had dower in the Ft. Thomas property, title to which was held by the son, Fred Chalk, as above described, which question is scarcely disputed. The language of the statute, Ky. Rev. Stats. 392.020 (Sec. 2132, Ky. Stats.) is:

"After the death of either the husband or wife, the survivor shall have an estate for his or her life in one-third of all the real estate of which the other spouse or any one for the use of the other spouse was seized of an estate in fee simple during the coverture, unless the survivor's right to such dower or interest has been barred, forfeited or relinquished."

Therefore, the widow has dower in real property of which anyone for her husband's use "was seized of an estate in fee simple during the coverture." The word "seized" in its technical sense had its origin in the days of feudalism, and the courts in these later days seem to have had difficulty in defining it under modern laws of property. See Vol. 38, Words and Phrases, Perm. Ed., "Seized," p. 521, and "Seisin," p. 514; 42 Am. Jur., Property, Section 45. Justice Story held in Cook v. Hammond, Fed. Cas. No. 3,159, 4 Mason 467, that the word "seisin" under acts of descent in this country was equivalent to ownership. For all practical purposes, therefore, the word "seized" means owned. 16 Am. Jur., Descent and Distribution, Section 64; 42 Am. Jur., Property, Section 45; 57 C. J. 97; Burdett v. Burdett, 26 Okl.

416, 109, P. 922, 35 L. R. A., N. S., 964, 965. And the owner of property is one in whom title is vested, either absolute or qualified. Baldwin v. Shine, 84 Ky. 502, 2 S. W. 164. The legal definition of the word is fully as comprehensive as the common understanding. So our statute in relation to dower may be said to read that a husband or wife of a decedent has an estate for life in one-third of all the real estate which the other spouse owned or anyone owned for his or her use during coverture.

In a case in some respects like the present, we have held, in accordance with KRS 392.040 (Sec. 2142, Ky. Stats.), that a widow has dower in real estate to which her husband had equitable title at his death. Harrison had a title bond for the conveyance of a parcel of land on the payment of a balance of $1,500 on the purchase price. The Commonwealth had a judgment against him for money owing as sheriff and Harrison surrendered the property, in writing, to be sold in satisfaction thereof. Griffith became the purchaser at the execution sale, subject to the $1,500 obligation. He subsequently acquired the note evidencing that debt. A suit was brought setting out the facts and asserting other claims against Harrison. The property was sold under the decree and Griffith bid it in. Before confirmation, Harrison died. His widow claimed dower, and we held that in surrendering the property the husband did not alienate her inchoate right nor did the execution or judicial sale, since the wife was not a party to the suit. "It is an inevitable result, therefore," says the opinion, "that as Harrison died seized of the property, his widow is entitled to be endowed after the payment of the preferred vendor's liens and the debts due the State." Harrison v. Griffith, 4 Bush. 146, 67 Ky. 146. See also Lane v. Judy, 12 Ky. Op. 379, 5 Ky. Law Rep. 513; Eubank v. Eubank, 13 Ky. Op. 673; Redmond's Adm'x v. Redmond, 112 Ky. 760, 66 S. W. 745; Ketterer v. Nelson, 146 Ky. 7, 141 S. W. 409, 37 L. R. A., N. S., 754; Ferguson v. Ferguson, 153 Ky. 742, 156 S. W. 413. It may be observed that there is a distinction between a husband's mere equity in land or the holding of title as an agent or trustee and an equitable title of a character that entitles him to have or enforce a conveyance of the legal or fee simple title, i. e., when he is seized of a beneficial interest. Bartlett v. Gouge, 5 B. Mon. 152, 44 Ky. 152; Gully v. Ray, 18 B. Mon. 107, 57 Ky. 107; McIlvaine v. McIlvaine, 10 Ky. Op. 181. The decedent, Jule Chalk, had such title. There-

fore, it makes no difference whether it should be held that the decedent had legal title to the property subject to the liens of his son, or that he owned an equitable title, for it is manifest that the son ''was seized of an estate in fee simple'' for the use of the father. That being the condition, the widow had dower in it. The wife's inchoate right of dower attached when the property was acquired, and not having joined in the conveyance of the part sold in 1929, her potential right became consummated as a vested one at the husband's death and the widow is entitled to have it recognized. Harris v. Langford, 83 S. W. 566, 26 Ky. Law Rep. 1096; Bartlett v. Buckner's Adm'r, 265 Ky. 747, 97 S. W. (2d) 805; Rowe v. Ratliff, 268 Ky. 217, 104 S. W. (2d) 437; Maryland Casualty Company v. Lewis, 276 Ky. 263, 124 S. W. (2d) 48; Pugh v. Pugh, 279 Ky. 170, 130 S. W. (2d) 40.

The innocence of knowledge by the purchaser that Jule Chalk was the real owner is not questioned. The plain principle of equity, recognized by the statute, KRS 392.060 (Sec. 2141, Ky. Stats.), requires that there be an allotment of equivalent dower in other real estate of the decedent. McClure v. Harris, 12 B. Mon. 261, 51 Ky. 261, 264; Richmond v. Harris, 102 Ky. 389, 43 S. W. 703; Helm v. Board, 114 Ky. 289, 70 S. W. 679; Cf. Wiley v. Wiley, 178 Ky. 501, 199 S. W. 47. The sale price of $2,500 is accepted by the widow as the fair value of the lot, and since she has elected to take the money value of her interest in her husband's real estate this sum should be added to the $9,400, which the rest of the Ft. Thomas property brought under judicial sale.

There can be no distinction between the sale and conveyance of a part of the property and the mortgage of the rest of it to the Savings & Loan Association. Hopkins v. Holmes, 10 Ky. Op. 374; Anderson v. Fitzpatrick, 49 S. W. 786, 20 Ky. Law Rep. 1617. So that in ascertaining the widow's right to dower the amount of the mortgage as well as the payments made on the debt by Fred Chalk must be disregarded.

The appellant argues that her dower right is prior and superior to the claims of the son, Fred Chalk, asserted to be secured by equitable liens on the property. As stated, the son advanced $2,200 as part of the purchase price. While the appellant maintains in her argument on other points that the decedent was the real owner of the property and that the deed to the son should

be construed as a mortgage, she nevertheless argues on this point that since he had no vendor's lien he is not entitled to priority of the dower right. As stated in McClure v. Harris, supra:

"The wife's right of dower is subordinate to the vendor's lien for the purchase money, because the lien is coeval with the husband's right to the land, and he acquires his title subject to the lien. As the title and the lien originated at the same time, the husband never has any right either equitable or legal unencumbered by the lien, and the wife's right of dower is therefore subject to the same encumbrance."

In that case the purchaser had paid off the vendor's creditors, to whom he had executed the purchase money notes, at the instance of the vendor, so the lien represented by the unpaid purchase money had been extinguished.

The superiority of a vendor's lien over the right of dower is well settled. Nazareth Literary and Benevolent Institution v. Lowe, 1 B. Mon. 257, 40 Ky. 257; Lee v. James, 81 Ky. 443; Matney v. Williams, 89 S. W. 678, 28 Ky. Law Rep. 494. It was so before the original enactment of the statute which has become KRS 392.040 (Sec. 2135, Ky. Stats.), providing that a wife shall not have dower in land sold in good faith after marriage "to satisfy a lien for the purchase money," but shall have dower or compensation out of the surplus. Helm v. Board, supra. The statutes recognize the existence of a lien in favor of the grantor for any part of the purchase money remaining unpaid although it is not reserved in the deed except as against bona fide creditors and purchasers. KRS 382.070 (Sec. 2358, Ky. Stats.). As between the vendor and vendee, it is not necessary that the retention of a lien be stated in the deed, the failure to do so affecting only innocent third persons. Pace v. Berry, 176 Ky. 61, 195 S. W. 131. In the instant case the factor of injury to innocent parties is not involved for the transaction was between the son and his father through whom the dower right is derived. Had the deed been taken in the name of the father and contained a statement that the son had paid $2,200 of the purchase money, no one could successfully deny that he had a lien to secure the payment thereof. Instead of doing that the entire title was taken in the son in order to secure him. There is another reason for holding the son is entitled to the

equivalent of a vendor's lien in so far as the dower right of the widow is concerned. That is by way of subrogation. Chilton v. Chilton, 217 Ky. 258, 289 S. W. 275; Federal Land Bank v. Marvin, 228 Ky. 242, 14 S. W. (2d) 762, 70 A. L. R. 1392; Bartley v. Knott, 140 Ky. 288, 130 S. W. 1096. This is in accord with the doctrine, which is that in the "administration of natural justice between all parties concerned" when one who is not a mere volunteer advanced money for the use and benefit of another he will be subrogated to his rights, except to the extent that it may injure innocent persons. Movl Construction Company v. Covington Trust and Banking Company, 258 Ky. 485, 80 S. W. (2d) 560, 561; National Surety Corporation v. First National Bank, 278 Ky. 273, 128 S. W. (2d) 766; Southern Exchange Bank v. American Surety Company, 284 Ky. 251, 144 S. W. (2d) 203. The rationale of the conclusion that the wife's right of dower is subordinate to a vendor's lien applies to this transaction, namely, that the real estate of which he or his son for his use became seized was subject to the lien from the moment the property was acquired; they were connate and coeval. Therefore, the amount of Fred Chalk's advancement for this purpose, with interest from August 2, 1928, should be deducted before calculating the widow's dower.

Dower right, inchoate or consummated, is also subordinate to a lien for taxes, including street assessment. KRS 92.590 (Sec. 3536, Ky. Stats.); KRS 134.420 (Sec. 402, Ky. Stats.); Mulligan v. Mulligan, 161 Ky. 628, 171 S. W. 420; Maryland Casualty Company v. Lewis, supra. As the holder of a lien on the property for money advanced for the initial payment thereof, Fred Chalk had the right to satisfy delinquent taxes and thereby become subrogated to the lien of the Commonwealth and other taxing districts for the sum so paid, with interest. KRS 134.080 (Sec. 4032, Ky. Stats.); Forcht v. National Surety Company, 177 Ky. 139, 197 S. W. 545; Maryland Casualty Company v. Lewis, supra. The propriety of the judgment allowing these tax liens as superior to the dower right is not questioned on the appeal. It is mentioned in order to recognize all the rights of the contending parties in respect to the appellant's claim of dower.

The court denied the prayer of the petition and overruled a motion made before the order of distribution was entered that a reasonable fee be allowed plaintiff's at-

torneys for services rendered in instituting and prosecuting the suit for settlement of the estate. The appellee would have the court regard the widow's claims as strictly those of a creditor and the suit as being one which seeks to collect his claim, in which class of cases it has been frequently held an attorney's fee for services rendered a plaintiff is not properly taxed as part of the cost. We do not think the case can be so classified. The plaintiff is a beneficiary of the estate, her share being determined by the statute of descent and distribution. Nearly nine months had expired since the executor qualified and he had apparently done little, if anything, but have the inventory and appraisement made, and that was being questioned. There were several pieces of real estate, all of which were encumbered. The mortgages and liens, including delinquent taxes, and unsecured debts, with other conditions, particularly the doubt as to the proper measurement of the widow's rights and consequent determination of the rights of other beneficiaries and creditors, reasonably required a suit to settle the estate, and to have the real estate sold under decree of court. As a beneficiary the widow was entitled to have this done. She had the unconditional right to bring the suit. Section 428, Civil Code of Practice.

The statute provides that if it shall be made to appear in an action for a settlement of an estate that a devisee, distributee, or party in interest shall have prosecuted a suit for the benefit of others interested with themselves, and shall have been put to an expense in conducting the same, the court shall allow such person his fees and costs, to be paid out of the funds recovered for distribution. KRS 412.070 (Sec. 489, Ky. Stats.). Difficulty is often encountered in determining whether a suit was really and primarily prosecuted for personal benefit, with the benefit of others resulting as an incidence, or whether the conditions reasonably justified the litigation and the results accomplished inured to the benefit of all parties. The distinction is partially drawn in Gernert v. Liberty National Bank and Trust Company, 284 Ky. 575, 145 S. W. (2d) 522. It is appreciated, of course, that scarcely any such suit is filed for purely altruistic purposes, but where conditions seem to justify the action and the results are really beneficial or profitable to all parties concerned, the intent of the statute, as well as equitable principles, require contribution by all. This suit accomplished a necessary result and the bene-

fits thereof redounded to all devisees and creditors. The executor, in his fiduciary capacity and personally, alone contested the claims of the plaintiff and was represented by counsel, which was eminently proper. He, too, asserted personal claims and sought the same relief; namely, a settlement of the estate. The other devisees only entered their appearances and were not represented by counsel.

We are of opinion the court should have allowed a reasonable fee to plaintiff's counsel. Oster's Ex'r v. Ohlman, 187 Ky. 341, 219 S. W. 187; Smith v. Graham, 274 Ky. 144, 118 S. W. (2d) 194. That should be done upon proof, consideration being given to the fact that the executor is likewise entitled to have a fee allowed to the extent that his attorneys represented the estate.

Judgment reversed.